**BERRY–PARKS RENTAL EQUIPMENT CO., INC. and Jerry Parks Equipment Co., Appellants,**

v.

**Paul SINSHEIMER and Vera Sinsheimer, Appellees.**

No. 01–91–00488–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 5, 1992.

Richard L. Fuqua, R. Kenneth Keim, Brent N. Whiteley, Houston, for appellants.

Joe G. Roady, Houston, for appellees.

Before DUNN, DUGGAN and MIRABAL, JJ.

## OPINION

DUNN, Justice.

This is an appeal from an order of dismissal for discovery abuse against the appellants, Berry–Parks Rental Equipment Co., Inc. and Jerry Parks Equipment Co. (collectively Berry–Parks). We affirm.

Berry–Parks sued Paul and Vera Sinsheimer (the Sinsheimers) on an account, alleging the Sinsheimers owed Berry–Parks $411,000.00. The Sinsheimers answered with a general denial and counterclaimed for slander.

Thus began the discovery battles and an unremitting course of obstructionism by the plaintiffs themselves. The depositions of Jerry Parks, Annette Parks, and the representatives of Berry–Parks Rental Equipment Co., Inc., Jerry Parks Equipment Co., and Carrz Co. were noticed by the Sinsheimers. Berry–Parks moved for a protective order and to quash the noticed depositions because the attorney representing the businesses in the litigation, and not their personal attorney, was served with the notices of deposition for the individuals and for Carrz, Inc., and because reasonable notice had not been given. Berry–Parks further objected to the documents requested in conjunction with the noticed depositions. The court agreed that reasonable notice had not been given and ordered the depositions postponed until June 11, 1990. At the time of the deposition, Berry–Parks were to produce all checks, documents, tax returns, and other records that supported their claim. The order further provided that the Sinsheimers had the right to examine Berry–Parks' records and that other depositions would be scheduled after Mr. Parks' deposition.

The court entered a docket control order on June 4, 1990, which set October 12, 1990, as the discovery deadline.

The Sinsheimers filed a motion for protection on June 4, 1990, seeking relief from responding to interrogatories until the completion of Mr. Parks' deposition. The Sinsheimers timely filed their objections to the interrogatories and asked the court to sustain the objections.

Berry–Parks filed another motion for protection and to quash the deposition of Mr. Parks on June 11, 1990, citing the necessity of hiring additional counsel because of the technical and constitutional issues in the case; however, Berry–Parks ultimately decided not to hire the extra attorney.

The court entered an order on June 11, 1990 in which Judge Lindsay ordered Mr. Parks to appear for his deposition on July 10, 1990. The court also ordered Berry–Parks to produce the responsive documents and a privileged document list to the Sinsheimers by June 19, 1990. The judge specifically stayed all other discovery in the case until Mr. Parks' deposition was completed. The court's order reflected dismissal as a possible consequence for violation of its order.

The Sinsheimers filed a motion to dismiss on June 25, 1990, because Berry–Parks had not complied with the court's June 11, 1990, order. At that time, the Sinsheimers asked the court to strike Berry–Parks' pleadings and dismiss the case with prejudice. The court denied the motion to dismiss, but once again ordered Berry–Parks to produce all responsive documents and a privileged list on or before July 10, 1990. It also ordered Berry–Parks to pay $500.00 in attorneys fees.

Berry–Parks subsequently filed a privileged list and claimed the privilege of "relevance" for most of the information contained in the tax returns they were ordered to produce. They also moved for protective orders quashing the discovery requests to Jerry Parks, Annette Parks, Carrz, Inc., and Orix Credit Alliance, Inc. because they were not parties to the litigation.

The Sinsheimers responded to the motion for protection and informed the court of the difficulties they were encountering in securing Mr. Parks' deposition. Mr. Parks' deposition was resumed on July 24, but was not continued after the 24th due to the inability of the parties to agree on a date.

The court again considered sanctions against Berry–Parks, including dismissal, on September 7, 1990. On September 11,

1990, the court entered an order outlining the procedures by which the depositions were to be conducted. The court ordered Mr. Parks' deposition to continue on November 19, 1990, production of unredacted financial statements and tax returns, a list of designated documents, and further instructed Berry–Parks regarding the method by which they would be deposed. This order forbade Mr. Parks from making unsolicited comments on the record and from interrupting his deposition so that he could supervise the copying of his records. Additionally, the court ordered financial sanctions and indicated that failure to comply would result in dismissal with prejudice.

The Sinsheimers again sought sanctions on November 19, 1990, because when Berry–Parks produced their tax returns, they had obliterated most of the information with stickers which could not be removed without destroying the information. The Sinsheimers again asked that the action be dismissed with prejudice. The court ordered Berry–Parks to pay sanctions of $3,500.00 by March 7, 1991, or the action was to be dismissed.

On February 8, 1991, the court entered another order regarding production and deposition scheduling. This order scheduled production from the Sinsheimers and their depositions for 30 days after the completion of Mr. Parks' deposition and also permitted additional discovery to be propounded to the Sinsheimers within 14 days of the completion of Mr. Parks' deposition.

On February 19, 1991, the Sinsheimers moved for leave to file a third-party action against Jerry and Annette Parks, individually, and against Carrz, Inc. The Parks were the sole shareholders, officers, and directors of the corporations that were the original plaintiffs in this lawsuit. Carrz, Inc. was another company controlled or owned by the Parks. Jerry and Annette Parks, in their individual capacities, and Carrz, Inc. answered the third-party action by general denial on March 18, 1991. They later amended their answer to assert the affirmative defenses of statute of limitations, privilege, mitigation, and truth.

On March 4, 1991, the Sinsheimers again moved for sanctions, to compel discovery, for a protective order, and other relief against Berry–Parks for violating the court's earlier orders. Berry–Parks responded and also filed a motion for rehearing of the order on its request for production and the docket control order. The court's order of March 22, 1991, reflected its frustration with this case. Among other things, it ordered that the tax returns be sent to its attention at the courthouse, that Mr. Parks would cooperate with the attorney taking his deposition, that Berry–Parks would be foreclosed from using any evidence not produced as per its order, and that the original docket control order would remain in effect.

The Sinsheimers again moved for dismissal of Berry–Parks' lawsuit on April 2, 1991. The judge granted the Sinsheimers motion on April 5, 1991, and dismissed with prejudice, the claims of Berry–Parks. The Sinsheimers subsequently moved to sever the main action from their counterclaims and to realign the parties. The court denied the motion to sever and granted the motion to realign; thus the Sinsheimers became the plaintiffs and Berry–Parks became the defendants.

Berry–Parks filed their appeal bond on April 26, 1991. The parties continued to seek orders to compel and/or orders for protection from the court until the Sinsheimers nonsuited all of the parties on May 6, 1991. None of the parties have filed a motion for new trial.

### Motion to Dismiss, or Alternatively, to Abate

Before the merits of Berry–Parks' points of error can be addressed, some discussion of the procedural posture of the case is warranted. The record indicates that Berry–Parks' claims were dismissed with prejudice on April 5, 1991. However, no final judgment was entered, and the Sinsheimers' counterclaims and third-party action were still pending when Berry–Parks filed its appeal bond on April 25, 1991. The nonsuit on May 6, 1991, by the Sinsheimers disposed of all parties and all issues.

Appellate courts must give each litigant every opportunity to be heard upon the merits of its case, and we are not to deny such right to any litigant unless compelled to do so. *Allen v. United Supermarkets, Inc.*, 467 S.W.2d 616, 621 (Tex. Civ.App.—Amarillo 1971, no writ). The object of the rules of procedure is "to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants." *Smirl v. Globe Laboratories*, 144 Tex. 41, 188 S.W.2d 676, 678 (1945); TEX.R.CIV.P. 1. A court of appeals has jurisdiction over any appeal where the appellant files an instrument that "was filed in a bona fide attempt to invoke appellate court jurisdiction." *Grand Prairie Indep. School Dist. v. Southern Parts Imports, Inc.*, 813 S.W.2d 499, 500 (Tex.1991); *see e.g. White v. Baker & Botts*, 833 S.W.2d 327 (Tex.App.—Houston [1st Dist.], 1992, n.w.h.) (not yet reported).

The rules of appellate procedure provide that "[p]roceedings relating to an appeal need not be considered ineffective because of prematurity if a subsequent appealable order has been signed to which the premature proceeding may properly be applied." TEX.R.APP.P. 58(a). This rule is applicable to the case before the court. While it may be true that, at the time the bond was filed, the order dismissing Berry–Parks' claims was interlocutory, the subsequent nonsuit by the Sinsheimers disposed of all issues and all parties and was therefore final and appealable. In fact, if the order granting dismissal as a sanction had disposed of all parties and issues before the court, it would have been final and appealable. *Stough v. Cole*, 720 S.W.2d 675, 676 (Tex.App.—San Antonio 1986, no writ).

The Sinsheimers' motion to dismiss, or alternatively, to abate is denied.

### Points of Error

Berry–Parks bring two points of error for consideration by the Court.

> The trial court abused its discretion in not permitting Berry–Parks any discovery during the pendency of the suit.

> The trial court abused its discretion by dismissing Berry–Parks' causes of action with prejudice.

### Standard of Review

In order to establish an abuse of discretion in relation to the application of TEX.R.CIV.P. 215, Berry–Parks must establish that the trial court acted without reference to guiding rules and principles, arbitrarily and unreasonably, and that the sanction does not serve the purposes of discovery. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991); *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990).

Although the order of dismissal did not specify which provision of rule 215 the court relied upon, the sanctions imposed by the court are among those authorized for various discovery abuses under rule 215 of the Texas Rules of Civil Procedure. The portion of the rule applicable to this case is subparagraph three, which provides:

> If the court finds a party is abusing the discovery process in seeking, making or resisting discovery ... then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b of this rule. Such order of sanction shall be subject to review on appeal from the final judgment.

TEX.R.CIV.P. 215(3). The sanction imposed here, dismissing Berry–Parks' cause of action with prejudice, is one of the sanctions available to the court in subparagraph 2(b)(5). In exercising its discretion in choosing the appropriate sanction, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but can consider everything that has occurred during the history of the litigation. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). As long as the sanction is "just," the rule leaves the choice of sanctions to the sound discretion of the trial court. *TransAmerican*, 811 S.W.2d at 916–17.

■ Although decided after the case at bar, the analysis of the supreme court in *TransAmerican* is instructive. The supreme court in *TransAmerican* determined that whether a sanction is "just" is measured by two standards. First, there must be a direct relationship between the sanction and the offensive conduct sought to be punished. *TransAmerican*, 811 S.W.2d at 917. This means that the sanction must be directed against the offender and seek to remedy the prejudice caused the innocent party. *Id.*

During the second prong of the analysis, we must ascertain that the sanctions were not excessive as compared to the violation. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *TransAmerican*, 811 S.W.2d at 917. Additionally, a trial court should consider imposing lesser sanctions if such sanction would insure compliance. *Id.* at 918.

■ These standards set the bounds of permissible sanctions under rule 215 within which the trial court is to exercise sound discretion. *TransAmerican*, 811 S.W.2d at 917–18. The dismissal of a party's claims is in essence the adjudication of the merits of its case, only to be done when a party's hindrance of the discovery process justifies a presumption that its claims lack merit, or when a party flagrantly exhibits bad faith of discovery under the rules. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976); *TransAmerican*, 811 S.W.2d at 918. The court can presume the party's claims lack merit when it refuses to produce material evidence despite the imposition of lesser sanctions. *TransAmerican*, 811 S.W.2d at 918.

### Point of Error Number One Not Permitting Any Discovery by Berry–Parks

Berry–Parks complain that the trial court abused its discretion because it did not permit them to conduct discovery of the Sinsheimers. They argue that this denial prejudiced their right to a just, fair, equitable, and impartial adjudication of their rights.

Although Berry–Parks' brief devotes only a few paragraphs to this argument, its argument on this point misstates the facts to a certain degree. Berry–Parks propounded their first set of interrogatories to the Sinsheimers on May 11, 1990, about six weeks after the petition was filed and three weeks after the Sinsheimers propounded their first discovery to Berry–Parks. In their first motion for protection on June 4, 1990, the Sinsheimers asked only that discovery against them be stayed until the completion of Mr. Parks' deposition, then scheduled for June 11, 1990. It was at the June 11, 1990, deposition that Mr. Parks was originally scheduled to produce documents responsive to a subpoena duces tecum. The problem arose because Mr. Parks' deposition was never completed.

It does not appear from the original order or the original motion for protection that either the Sinsheimers or the court contemplated that the Sinsheimers would never have to respond to discovery. This is confirmed by the court's later order setting the timetable for the Sinsheimers to respond to discovery requests. The situation occurred because of Berry–Parks' refusal to cooperate with the taking of Mr. Parks' deposition and in refusing to fully comply with discovery requests. Thus, we find that the court did not abuse its discretion.

Berry–Parks' first point of error is overruled.

### Point of Error Number Two Dismissal of the Appellants' Causes of Action with Prejudice

■ Contrary to Berry–Parks' assertion that this sanction was unreasonable, the record reflects that Judge Lindsay showed the "patience of Job." When reviewing the record, it is apparent that the court gave Berry–Parks every opportunity to comply with discovery requests and with its orders before Berry–Parks' action was dismissed with prejudice.

According to the record before us, the court entered eight orders dealing with motions to compel filed by the Sinsheimers. These orders reflect that Judge Lindsay considered dismissal of Berry–Parks' action on several occasions, but rejected it in fa-

vor of lesser sanctions. It appears the staying of all discovery until the completion of Mr. Parks' deposition may have even been a method used by the court to entice Berry-Parks to cooperate during discovery. The record is replete with actions by Berry-Parks, the purpose of which apparently was to make the litigation as time consuming and as expensive for the Sinsheimers as possible.

Berry-Parks claim that the sanction was an abuse of discretion because it did not further the goal of compliance with discovery. Berry-Parks claim they had already complied with all discovery requests. However, this assertion is contrary to the findings in the court's order and not supported by evidence in the record.

Applying the standard set out by the supreme court in *TransAmerican,* the actions of the trial court punished both the offender and the offensive conduct. Further, as evidenced by the court's many rulings prior to the order of dismissal, lesser sanctions did not obtain compliance.

Berry-Parks' second point of error is overruled.

The judgment of the trial court is affirmed.