**Diana Lynn EASON, Appellant,**

v.

**Marvin Lee EASON, Jr., Appellee.**

**No. B14–91–01382–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 29, 1993.

Dissenting Opinion of Justice Draughn Aug. 26, 1993.

Douglas James Hord, Bellaire, John J. Knoff, Houston, for appellant.

Stanley D. Wilkinson, Pamela S. Halliburton, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

Appellant appeals a final order modifying the existing conservatorship of her minor child. In two points of error, she complains that the trial court abused its discretion when it struck her general denial and denied her the right to present witnesses at trial, and that due to the sanctions, the Court did not fully consider what was in the best interest of the child. We affirm.

Appellant and Appellee were divorced on May 16, 1987. Managing conservatorship of their only child was awarded to the Appellant. On March 6, 1990, Appellant petitioned the Court for an increase in child support. Appellee answered and cross-petitioned for custody. An attorney ad litem was appointed. The Appellant responded to the cross-petition with a general denial. In May of 1990, the Court ordered that the Appellant and Appellee pay the attorney ad litem fees. The order indicated that failure to pay the fees could result in their pleadings being stricken. In August of 1990, Appellant's pleadings requesting additional child support were struck for failure to pay the ad litem's fees.

A trial on the issue of modification was held on January 28, 1991. The Rule was invoked, and Appellee proceeded to his case-in-chief. He introduced into evidence a picture of his son's bruised legs. Appellee testified that the picture was evidence of Appellant's abuse of the minor child. The Court recessed for the day and specifically instructed the parties not to discuss the case with

the child. The next day during cross examination of the Appellee, Appellant's trial counsel asked him, "would you be surprised if your son told me this morning that these bruises were not caused by whippings?" The attorney ad litem objected that "nobody was supposed to discuss the case with the child." Obviously, the child had been told about the picture and the testimony. The Court granted a mistrial. The case was reset for July 15, 1991. The Court then ordered that additional ad litem fees be paid. As of July 15, 1991, the Appellant had failed to pay some of those court-ordered fees.

On June 5, 1991, the attorney ad litem sent Interrogatories and Requests for Production to the Appellant's attorney. Appellant's answers were due by July 5, 1991. In the interrogatories, the attorney ad litem specifically requested that the Appellant list all expert witnesses and fact witnesses she intended to call at trial. On July 11, 1991, the ad litem filed a motion to impose sanctions, to strike the Appellant's pleadings, and to impose a default judgment, alleging the Appellant still had not answered the interrogatories or produced the requested documents. A hearing on the motion was scheduled for July 15, 1991. By the fifteenth of July, the Appellant had answered some, but not all of the interrogatories. She never fully answered the interrogatories or objected to them, and she never produced the requested documents. The attorney ad litem contends it was impossible to protect the best interest of the child without the requested production and identification of witnesses.

On July 15, 1991, the master in the case struck the Appellant's general denial and suggested granting a default judgment because of Appellant's refusal to comply with prior orders of the Court and the ad litem's requests for production. The Appellant appealed the master's decision to the trial court. The Court affirmed the master's decision, struck Appellant's general denial, proceeded to trial, and excluded Appellant's witnesses. A two-day trial was held on the issue of modification. The Court found for the Appellee and awarded him managing conservatorship of the child.

In her first point of error, Appellant maintains that the trial court erred in striking her answer and excluding her witnesses. A trial court is authorized to sanction a party under TEX.R.CIV.P. 215. It may consider everything that has occurred during the history of the litigation when determining how to sanction a party. *Berry–Parks Rental Equip. Co. v. Sinsheimer*, 842 S.W.2d 754, 757 (Tex.App.—Houston [1st Dist.] 1992, no writ). The choice of what sanctions to impose is left to the sound discretion of the Court. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). The Court only abuses its discretion if the sanctions are not "just." *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). Sanctions are "just" if they are not excessive and there is a direct relationship between the offensive conduct and the sanctions imposed. *Id.*

TEX.R.CIV.P. 215(2)(b)(5) provides:

If a party ... fails to comply with proper discovery requests or to obey an order to provide or permit discovery ... the court ... may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

(4) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(5) An order striking out pleadings or parts thereof.

TEX.R.CIV.P. 215(5) provides:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists.

TEX.R.CIV.P. 215(5) is mandatory, and if a party fails to respond to or supplement discovery, the undisclosed evidence cannot be admitted at trial unless the trial court finds that good cause existed for the

failure to respond. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992); *Multi–Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 566 (Tex.App.—Dallas 1990, writ denied). Good cause must be shown on the record. *National Union Fire Ins. Co. of Pittsburgh, PA., v. Wyar*, 821 S.W.2d 291, 293 (Tex.App.—Houston [1st Dist.] 1991, no writ).

The Supreme Court held in *Alvarado* that:

To relax the good cause standard in Rule 215(5) would impair its purpose.... The difficulty with the rule lies not so much in the requirement of strict adherence, but in the severity of the sanction it imposes for every breach. The consequences of the rule should not be harsher in any case than the vice the rule seeks to correct. The sole sanction should not be the exclusion of all evidence not properly identified in discovery; rather, as with other failures to comply with discovery, the trial court should have a range of sanctions available to it to enforce the rules without injustice.... **As written, however, Rule 215(5) prescribes a single sanction for failing to supplement discovery, and we are not free to disregard its plain language. Nor should we revise the rule by opinion.** (emphasis added).

*Alvarado* at 915.

■ All parties agree that Appellant responded *in some manner* to the discovery requests. However, we cannot tell which requests were provided and which were omitted because Appellant has failed to include that information in that appellate record. It is Appellant's burden to present a record sufficient to show error. Tex.R.App.P. 50(d). Without her answers to interrogatories, we must presume Appellant's witnesses and evidence were properly excluded from trial under the mandatory provision of Rule 215(5).

■ Appellant has likewise failed to provide this Court with a statement of facts from the hearing on the Motion for Sanctions. Without a statement of facts from that hearing, this Court cannot determine if the trial court clearly abused its discretion by imposing the sanctions. Tex.R.App.P. 50(d); *National Union Fire Ins. Co. v. Wyar*, 821

S.W.2d 291, 296 (Tex.App.—Houston [1st Dist.] 1991, no writ). Appellant has not met her burden.

What the record does show is that:

(1) The trial court ordered Appellant to pay attorney ad litem fees, and she only partial paid those fees;

(2) Appellant failed to attend a court-ordered social study with the Family Court Services;

(3) Appellant deliberately and in violation of the trial court's instruction caused a mistrial in the first trial held on January 28, 1991;

(4) Appellant failed to answer the interrogatories timely, failed to answer them completely, and never complied with the request for production; and

(5) Appellant's attorney failed to appear at the pre-trial conference;

We find no abuse of discretion. Appellant's first point of error is overruled.

■ In her second point of error, Appellant claims that the trial court's imposition of sanctions prevented full consideration of the best interest of the child. Appellant maintains that because the trial court did not have all the evidence before it, it could not make a proper determination about modification.

■ Tex.Fam.Code Ann. § 14.07(b) (Vernon 1986) provides that "in determining the best interest of the child, the court shall consider the circumstances of the parents." In a modification procedure, this burden rests with the petitioner. *Considine v. Considine*, 726 S.W.2d 253, 255 (Tex.App.—Austin 1987, no writ). The petitioner must prove that the circumstances of the child have materially and substantially changed; that the retention of the present managing conservator would be injurious to the child's welfare; and that the appointment of the petitioner as a new managing conservator would be a positive improvement for the child. Tex.Fam. Code Ann. § 14.08 (Vernon Supp.1993); *Considine* at 255.

The evidence indicates that the child was moved approximately nine times in the last four years; the child's school grades had declined; the Appellant had lived with two

different men since the divorce, and became pregnant by one of them; and, the Appellant was no longer working and was on disability pay. The Appellee, on the other hand, had been working for the same company for sixteen years; had remarried and started a new family; and owned a home. The social study report indicated that the Appellee had a good relationship with the minor child in question. The family service worker and the attorney ad litem both believed that it was in the best interest of the child to change the managing conservatorship. The trial court found that it was in the best interest of the child to live with the Appellee.

■ The Court has wide discretion in determining what is in the best interest of the child, and its decision will not be reversed absent an abuse of discretion. *Thompson v. Thompson*, 827 S.W.2d 563, 566 (Tex.App.—Corpus Christi 1992, writ denied). Reviewing all the evidence, we find that the evidence was sufficient for the trial court to determine what was in the best interest of the child. Appellant's second point of error overruled.

The judgment of the trial court is affirmed.

DRAUGHN, Justice, dissenting.

I respectfully dissent. I would hold the trial court abused his discretion in refusing to allow the appellant to testify or present witnesses in her behalf. Surely, the trial judge has in his procedural arsenal of sanctions a weapon less devastating than that which takes away the right of a mother to testify and defend herself in a proceeding aimed at taking custody of her child from her.

As the majority opinion aptly points out, the standard for discovery sanctions is whether they are "just." TEX.R.CIV.P. 215(2)(b)(5). The trial judge abuses his discretion only if the imposed sanctions are not just. "Just" means they are not excessive and there is a direct relationship between the offensive conduct and the sanctions imposed. *Chrysler Corp. v. Backmon*, 841 S.W.2d 844, 849 (Tex.1992). In other well-used words from a different context, "the punishment must fit the crime."

I cannot conceive of a more excessive and less "just" sanction than to refuse to allow a mother in a custody proceeding to testify in her own behalf. The effect of such a sanction is, by analogy to the criminal law, equivalent to a civil death penalty. While admittedly the comparison is mixed and hyperbolic, it is not too much so, because if a litigant's pleadings are struck and she, or he, is stripped of the right to personally testify and defend against a loss of child custody, then that person is legally "naked" in the courtroom contest. The Texas Supreme Court characterized such a sanction as "the most devastating a trial court can assess against a party." *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913, 917–918 (Tex.1991). And although not raised here, the *TransAmerican* opinion referred to the constitutional limitations upon the power of courts in carrying out their procedural processes to deny a party an opportunity to defend a case on the merits. *ibid.*, 918.

The majority opinion and the attorney ad litem (the offended party in this case) minimize the sanction by pointing out that, unlike the *TransAmerican* case, the trial court here refrained from granting a requested default judgment against the appellant. With all due deference to that line of *de minimus* comparison, I find it a distinction without a real difference. Here, Mrs. Eason was allowed only to observe a hearing where her rights to custody of her son were in the balance, but she was not allowed to present any tangible evidence, any witnesses, or to testify in her own behalf. The critical issue was her behavior as a parent, yet, she was not allowed to defend herself. True, her attorney was allowed to cross-examine the witnesses for the appellee, but the real party whose conduct was being challenged, appellant, was forced to stand mute. Technically, the proceeding was not a default judgment, but in its effect on appellant, it was a mirror image of one. When the judge prevents the key party whose conduct is the prime issue from testifying, a skeleton trial results.

A chronology of the procedural events culminating in the judgment to take custody of appellant's son from her, is enlightening. Appellant and appellee were divorced on

May 16, 1987. Custody of their son was awarded to appellant. The record reflects that child support in the original divorce decree was specified as $400.00 per month. But appellee admitted that he only paid $350.00 per month and refused to pay the additional amount. In March of 1990, appellant petitioned the court for what should have been almost a *pro forma* decision to require him to pay what he was legally obligated to pay.

Because of the twisting legal maze that followed, appellant's attempt to obtain the correct and increased child support turned out to be a terrible precipitating mistake on her part. Her ex-husband responded, not by offering to pay the correct and delinquent amount of child support that was due, but by filing a petition to change custody of the child to him. The downward legal spiral for appellant began. First, the two actions were consolidated and an attorney ad litem was appointed by the court. Then the court ordered the parties to deposit $2,000.00 as an advance against the anticipated attorney's fees for the ad litem. Appellee, whose monthly salary as a Senior Lab Technician for Anadrill/Schluberger was approximately $3,200.00, promptly paid his portion. Appellant failed to promptly pay her portion of the ad litem deposit. The record shows that she injured her back on the job and was receiving weekly worker's compensation payments.

At this point the court intervened to strike appellant's pleadings for increased child support because of her failure to pay her portion of the ad litem fees. To seek money to which one is legally entitled, one must first have money. Thus, the initial legal circle was completed around appellant. Disabled, she had simply sought an increase in child support to which she was legally entitled, and because her husband sued for custody, she was ordered to pay advance ad litem fees. Because she could not pay, her pleadings for the child support she was due, were struck. All that remained then was her husband's suit to take custody of the child from her. In need of money to support her child, she had sought a legal increase in child support. Because she needed money, she had no money to pay the ad litem fee; because she had no

money to pay, her pleadings seeking money were struck.

To round out this circular legal logic—at the time appellant's pleadings for increased child support were struck, her ex-husband was admittedly delinquent in legal child support due in the amount of $50 per month for a total of 39 months, or $1,950.00, more than enough to pay the $500 ad litem fee she owed. The final irony: he was free at this time to continue to pay the reduced child support without fear of legal sanction. Meanwhile the ad litem fees would continue to accrue in his suit for custody. Appellant thus found herself out of court because of lack of funds, and back in court facing a custody battle which required more funds. All because she filed suit for money legally due her.

The next legal scenario was the first trial on appellee's custody petition in January, 1991. At this hearing, the trial court acknowledged the incorrectness of the child support that had been paid by appellee for the preceding three years and eight months. That calculates out to a total of $2,200 he owed in child support at the time of the trial—considerably more than enough to pay appellant's share of the ad litem attorney's fees. The trial judge, sensing this injustice, at first ordered the child support to be increased to the correct amount, $400.00 per month, but then reversed himself because that matter was not technically before the court. Indeed, it was not, because he had stricken her pleadings for the child support increase because she had failed to pay her $500 portion of the advance ad litem fee deposit. To complete the legal scenario, the judge entered a limited order of temporary joint custody of the child and *an additional $1,000 for ad litem attorney fees to be paid equally by the parties.*

No final judgment was entered at this time because the court, in effect, declared a mistrial. This was caused by appellant's attorney who apparently violated a prior court order that the parties and their counsel were not to discuss the case with the child. No sanction was imposed against appellant's attorney. Appellant was subsequently able to pay some of the ad litem fees.

Sixty days prior to the second and final trial, the attorney ad litem filed extensive interrogatories and requests for production of documents. Among the interrogatories were questions such as:

Have you engaged in sexual intercourse with anyone since the date of divorce? If so, state with whom, where it occurred, when it occurred, and where KEVIN LEE EASON was at the time of the occurrence.

Other interrogatories asked her to list "every reason why" her ex-husband "should not be named sole managing conservator" and to "List and describe" all the parenting skills of herself and her ex-husband. Other questions inquired about her job, salary, and her male relationships. The Request for Production of Documents, twenty in number, asked for extensive school records for her son for the last six years, copies of all letters and memoranda between her and her ex-husband, sound recordings, birth certificate of the child and other data.

Appellant failed to answer and produce timely. Her attorney made no effort to explain or communicate with the ad litem about the completion of these discovery requests. In fact, the record reflects that appellant's attorney announced in open court to the judge that he had not filed the answers on behalf of appellant, because "he had been fishing the bay."

As the majority opinion points out, the parties agree the appellant responded in some manner to the discovery requests, but the record does not contain those responses. I make no apology for the Appellant's failure to fully and timely respond, her attorney's "bay fishing" notwithstanding. But I also suggest this record reflects that the harm done to the offended party, the attorney ad litem, did not rise to the level that required she be prohibited from testifying in her own defense.

In fact, most of the information sought by the ad litem was obtained and presented at the hearing by the appellee-husband, and the record reflects that the ad litem had visited and conducted an interview with appellant. As evidenced by the ad litem's considerable pleadings in this case and her extensive arguments, she was certainly aware of the negative aspects of the appellant's life and circumstances, as was the appellee-husband. It is the positive side, appellant's side, that was omitted by court's sanction which had been so ardently sought by the ad litem and appellee. I note that much of the appellee's trial testimony complaining about appellant's parenting related to incidents in the past, of which he was aware but did very little about until appellant filed for an increase in child support. Most of the incidents he complained about occurred during the time he was paying the unilaterally reduced child support to her.

This case is a prime example why our discovery sanctions should not be automatically and intractably applied so as to deny a person the opportunity to testify, except in the rarest of cases. I do not need to recite the variety of less harsh sanctions the trial court could have imposed. This has been ably done in the concurring opinion in the *TransAmerican* case. See *TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913; 920–922. In this case, because of the original mistrial caused by him and his "bay fishing" comments, the court could have directed some portion of the sanctions at the original attorney for appellant. Appellant was without transportation, resided 150 miles from Houston, and necessarily, she relied heavily on her attorney. He certainly should bear some responsibility for what occurred.

Unlike most of the sanction cases cited, the court was not here dealing with two large corporations or seasoned businessmen who were battling at arms length in a complicated business dispute, represented by several counsel. This is one woman, an unskilled worker on disability relief, who entered the legal arena belatedly and reluctantly to simply receive the child support to which she was legally entitled, and who ended up in a complicated legal battle for custody of her child with both hands tied. She lost, not because a full airing of her side was inadequate, but largely because of lack of sufficient funds and because of her counsel's actions and inactions which left her legally handicapped.

I conclude that a full and fair hearing was not allowed in this case. There is ample credit for this result to be shared among the other participants. In my opinion, the attorney ad litem, instead of aggressively seeking to stifle the appellant by sanctions at trial, would have better served the court and enlightened the issue to be decided by seeking to have full and complete testimony by appellant. After all, is not that what we should all be seeking in such a serious matter—a full and complete hearing for all sides?

Admittedly, appellant was not totally without fault and some sanction was appropriate, but to deny her the fundamental right to testify in the most important trial a mother must endure was, in my opinion, unjust, excessive, and just plain wrong under the circumstances of this case. I do not know whether the appellant's testimony would have changed the result. She may still have lost the custody of her son. Nor can I predict on a retrial that she would prevail. I can only say that she was entitled to defend herself by telling her side of the issue. Fairness dictates that as a minimum, and we should accept no less.

I find the trial court abused his discretion in imposing this devastating sanction and would reverse and remand for a new trial.