# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00452-CV

### In the Interest of L. M. M. and S. D. M.

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT
### NO. 01-1272-F395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING

## C O N C U R R I N G   O P I N I O N

For all the reasons discussed in my concurring opinion in *In re J.R.D.*, No. 03-04-00311-CV, 2005 Tex. App. LEXIS 5503 (Tex. App.—Austin July 17, 2005, no pet. h.) (Puryear, J., concurring), I write separately to concur in the judgment of the Court.

Appellant Moe challenges the trial court's order denying her motion to be named sole managing conservator of the children and limiting her parental rights by granting her less than the standard possession order set out in family code sections 153.311 *et seq*. Moe asserts that the trial court erred in conditioning her periods of possession and access to her children upon the recommendations of therapists.[1] The trial court found by a preponderance of the evidence that maintaining Malmquist as joint managing conservator with the right to determine the children's primary residence and placing limits and conditions on Moe's rights of possession and access were

---

[1] Moe also challenges the trial court's award of attorney's fees against her, as do her parents. Because I agree with the majority's disposition of that issue in all respects, I do not write separately regarding it. I also agree with the majority's vacating the October 2004 order and do not write separately regarding it.

not injurious to the children and that Moe's appointment as sole managing conservator should be denied. *See Eason v. Eason*, 860 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1993, no writ). Moe argues that the denial of her request to be named sole managing conservator and the limitations placed upon her rights to possession and access were each an abuse of discretion. The majority affirms the trial court's ruling placing limits upon Moe's parental rights, holding that the trial court did not abuse its discretion because there was some substantive and probative evidence existing to support the order. *See Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.); *see also Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982).

Because I believe that the current standards of proof and review applied by Texas courts are inconsistent with the constitutional nature[2] and importance of the rights at issue and our legislature's stated policy and directives, I would review this order under a heightened standard. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (fundamental liberty interest of parents in relationship with children is constitutionally protected); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (parent's interest in care, custody, and management of children paramount and due greater respect than liberties derived from mere shifting economic arrangements); Tex. Fam. Code Ann. § 153.193 (West

---

[2] I strongly disagree with the majority's assertion that, because the court did not intend to completely deny Moe's rights of possession and access, but only to place reasonable limitations on those rights, Moe's constitutional rights were not implicated. If this were the case, there would have been no constitutional issue presented in *Troxel v. Granville*, where the appellant mother likewise was not at risk of never seeing her children again, but only of having limits placed upon her custody and control of her children in the form of enforceable grandparent visitation. *See generally Troxel v. Granville*, 530 U.S. 57 (2000). The United States Supreme Court has opined that there is a fundamental, constitutional right of parents "to make decisions concerning the care, custody, and control of their children" that is implicated when "any decision by a parent concerning visitation of the parent's children" is subjected to court review or intervention, not only when that parent might be prevented from ever seeing her children again. *Id*. at 66-67.

2

2002) (limitations or restrictions on parent's right to possession of or access to child "may not exceed those that are required to protect the best interest of the child."). Accordingly, I would require the trial court's order to be supported by clear and convincing evidence and conduct a legal and factual sufficiency review of that order. *See J.R.D.*, 2005 Tex. App. LEXIS 5503, at \*14 (Puryear, J., concurring).

I would begin from a presumption that Moe is a fit parent. *See Troxel*, 530 U.S. at 68. In order to overcome that presumption and limit or condition Moe's access to her children, I would require the court to find, based upon clear and convincing evidence, that the specific limitations it placed upon her did not exceed what was required to protect the children's best interests.[3] *See* Tex. Fam. Code Ann. §§ 153.193 ("Minimal Restriction on Parent's Possession or Access"); 153.001(a) (public policy is to assure frequent and continuing contact with parents who have shown ability to act in best interest of child and provide a safe, stable, nonviolent for child); *see generally J.R.D.*, 2005 Tex. App. LEXIS 5503 (Puryear, J., concurring). The trial court here found that these restrictions were necessary to protect the children's best interests and that the modification Moe requested would not be in the children's best interests.

---

[3] The family code can authorize State intervention in the relationship between parents and children where necessary to protect the child's best interests even though it infringes a parent's liberty interest in rearing her child because the State has a countervailing *parens patriae* interest in preserving and promoting the welfare of the child. *See Santosky v. Kramer*, 455 U.S. 745, 766 (1982); *see also Heller v. Doe*, 509 U.S. 312, 332 (1993) (citing *Addington*, 441, U.S. at 426 for proposition that "the state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable . . . to care for themselves"). This interest includes protecting juveniles from their own "folly" when parental control falters. *Schall v. Martin*, 467 U.S. 253, 265 (1984).

Moe argues that the trial court erred by not appointing her managing conservator with the right to determine the children's primary residence because doing otherwise was not in the children's best interest and by restricting her possession of and access to the children because its delegation of the authority to her therapist and the children's therapist to jointly cancel any specified period of possession and access was an abuse of discretion. The majority affirms each of these rulings because each was supported by "some evidence of a substantive and probative nature." *See Echols*, 85 S.W.3d at 477. I would also affirm the trial court's order, but because I believe that it could have properly found by clear and convincing evidence that its limitations on Moe's possession of and access to the children did not exceed those required to protect the children's best interest and that there is legally and factually sufficient evidence supporting its findings.

A court finding regarding children's best interests that is required to be based upon clear and convincing evidence survives a legal sufficiency challenge where, in examining the evidence in the light most favorable to the findings and disregarding evidence a reasonable fact finder could have disbelieved, the appellate court determines that a reasonable fact finder could have formed a firm belief or conviction that the findings are correct. *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). A best interest finding survives a factual sufficiency challenge only if the evidence is such that a reasonable fact finder could form a firm belief or conviction that the finding is correct. *In re C.H.*, 89 S.W.3d 17, 18-19 (Tex. 2002).

Examining the evidence in the light favorable to the court's finding that the limitations it placed on Moe's possession and access were in the children's best interest, I believe a reasonable fact finder could have formed a firm belief or conviction in the correctness of that

4

finding. There was ample testimony from several witnesses, including school personnel, family members, and the children's therapist, that Moe had consistently violated court orders designed to protect the children's best interests and that she had psychologically harmed both children during her decade-long legal campaign against their father. There was testimony that she actively encouraged both children to cause discipline problems for their father and that she publicly heaped emotional abuse upon her daughter at school and could neither control her outburst and focus upon her daughter rather than her anger at her ex-husband, nor comprehend that her behavior could harm her child. Instead of using the children's therapist as a resource to help rehabilitate her faltering family, Moe habitually attempted to use her to force changes upon their father. Moe herself testified that, after repeated warnings and court orders to stop using her children as weapons and to protect them by keeping them out of the middle of their parents' conflict, she deliberately sent her son into his father's household with a tape recorder in order to gather evidence. Although she has persistently depicted her ex-husband as volatile and physically abusive, she claims she did not think about whether sending her son to secretly record household conflict would put him in any danger. In response to questioning about the children's needs and welfare, Moe repeatedly answered with justifications of her behavior and attacks upon her ex-husband, which led the trial court to conclude that she did not grasp the magnitude of the damage she caused the children both directly and by perpetuating the constant state of family crisis. Given the evidence of Moe's inability or refusal to understand or change her behavior, to separate her own needs or desires from those of the children and to control her anger and deal constructively with the children, it was reasonable for the court as

fact-finder to firmly believe that the gradually expanding visitation schedule conditioned upon a program of continued therapy by Moe was necessary to protect these children's best interests.

Viewing all the evidence neutrally, I would also hold that the court could reasonably have formed a firm conviction or belief that these limits were necessary to protect the children's best interests. At trial, there was evidence that the children are very bonded to Moe and that they love each other. A review of the record also reveals a wealth of complaints about Malmquist, whose authoritarian discipline style and apparent insensitivity have also caused problems with the children. However, there is also evidence that Malmquist and the children love each other and that he provides a stable home with appropriate structure that these children need in order to succeed in school and in life. Considering the evidence discussed above, as well as Moe's overall approach, her focus appears to have been upon what Malmquist has done wrong rather than on what she can do right for the children.[4] There was plenty of evidence that the children needed a change; family members, therapists, and school personnel testified to their sliding academic performance and behavioral problems and the devastating effects upon the children of the chaos in their home life. While both parents claimed to recognize the need for change, there was evidence that Moe continued to violate court orders and behave conflictually, apparently in the belief that the only change that the children needed was to be removed from their father and that the necessity of this end justified whatever means by which it could be achieved. While Moe may care for the children, all the evidence taken

---

[4] In fact, even her issues on appeal center upon Malmquist rather than upon her own fitness; she casts her issue as a challenge of the trial court's mistake in retaining Malmquist as joint managing conservator rather than its denial of her motion to modify. As the majority points out, however, it was Moe's burden as the moving party to show that she should be named sole managing conservator, not Malmquist's to show that he should not be stripped of his status as joint managing conservator.

6

together supports the trial court's determination that it would not be in their best interests for her to have unsupervised visitation with them or exercise the standard possession schedule until she enjoyed some success in her court-ordered therapy.

Because I believe that there is legally and factually sufficient evidence in this case to justify a finding by clear and convincing evidence that the limitations the trial court placed on Moe's rights of possession and access and its decision not to immediately grant her the standard possession order, I concur in the judgment of the Court affirming the trial court's final order.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed: August 31, 2005

7