Opinion issued November 20, 2008




 














In The

Court of Appeals

For The

First District of Texas






NO. 01-07-01049-CV

____________


ANN MERCADEL GARCIA, Appellant


V.


ROBERT E. HARDING, Appellee






On Appeal from the 300th District Court

Brazoria County, Texas

Trial Court Cause No. 944*OB97






MEMORANDUM OPINION ON REHEARING

 We deny appellee's motion for rehearing. See Tex. R. App. P. 49.3. We
withdraw our October 9, 2008 opinion, substitute this opinion in its place, and vacate
our October 9, 2008 judgment.

 Appellant, Ann Mercadel Garcia, challenges the trial court's September 4, 2007
order, which, in accordance with a jury verdict, appointed appellee, Robert E.
Harding, as joint managing conservator with the exclusive right to establish the
primary residence of the minor child of Garcia and Harding. (1) In two issues, Garcia
contends that the evidence is legally and factually insufficient to support the jury's
findings that it was in the best interest of the child to appoint Harding as a joint
managing conservator and to designate him as having the exclusive right to establish
the primary residence of the child.

 We affirm.

Factual and Procedural Background

 On May 13, 2005, Harding petitioned the trial court to appoint him as a joint
managing conservator with the exclusive right to establish the primary residence of
the child, alleging that a material and substantial change in the circumstances
supported a modification of the parent-child relationship. In a May 19, 2000 order,
the trial court had previously appointed Garcia, who had never married Harding, as
the sole managing conservator with the exclusive right to establish the primary
residence of the child. 

 At the modification hearing, Harding testified that the child was born on June
18, 1997 and that he was about to enter the fourth grade. Harding conceded that, on
August 28, 1998, he had signed an affidavit of relinquishment of parental rights,
explaining that, initially, he did not know if he was the child's father and that Garcia
had told him that she did not want him involved in the child's life. However, Harding
explained that it had been approximately nine years since he had signed the affidavit
and that in 2005 he received a court order establishing him as the father of the child.

 In 2001, Harding, a Pearland Police Department officer, lived close to Garcia
in the Houston area. However, in the early fall of 2001, while working as an officer,
he was charged with the Class C misdemeanor offense of assaulting Garcia. Harding
explained that he did not assault Garcia and, after he completed an anger management
course, the case was dismissed. He conceded that, due to this charge, the Pearland
Police Department had placed him on administrative leave. In December of 2001,
Harding's brother-in-law offered him a job as an insurance adjuster in Ohio, so
Harding resigned from the Pearland Police Department to take the position. Harding
conceded that, due to the assault charge, it would have been difficult for him to find
another job as a police officer in the Houston area. Before moving to Ohio, Harding
saw the child frequently, but since moving, Harding normally saw him for one month
during the summer, and he tried to telephone the child at least twice a week. 

 Harding stated that after the move, on "several occasions," Garcia prevented
him from seeing the child and, when he made telephone calls to Garcia seeking to
inquire about the child, Garcia rarely returned his telephone calls, even though he left
voice messages. Harding added that the child steadily received failing grades, noting
that the child was supposed to be in the fifth grade, but that he was only in the fourth
grade because he had to repeat the first grade. Harding stated that he would work
with the child to ensure that his grades improved if the child were to live with him.

 In August of 2002, Harding received a letter in which Garcia stated that she
was living with a registered sex offender, Mateo Garcia, whom she met in 2000. 
Garcia had not informed Harding of this relationship until she sent him the letter. In
the letter, Garcia explained that Mateo was on community supervision until February
2004 for molesting his daughter. Harding also explained that, from Garcia's
deposition testimony, he learned that Garcia had left the child alone with Mateo. 
When asked why he waited until 2005 to modify the May 19, 2000 order, Harding
explained that various attorneys had told him that, although Garcia and Mateo lived
together, Mateo could move out at any time, which would cause any attempted
modification to fail. When Garcia married Mateo, Harding then brought forth his
motion to modify, arguing that it is in the child's best interest for the trial court to
modify the current custody order and appoint him as joint managing conservator with
the exclusive right to establish the child's primary residence due to Garcia's marriage
to a registered sex offender. Additionally, Harding noted that he had family in Ohio,
he had flexibility with his job, he could provide the child with structure, and Garcia
had made "bad decisions." 

 Garcia testified that in September 2000, she started to date Mateo and, on their
first date, Mateo explained to her that he was a registered sex offender because he had
"raped a female." (2) As Garcia continued to date Mateo, she learned that the female
was Mateo's daughter. Mateo explained to Garcia that he had started sexually
assaulting his daughter when she was nine years old, and he continued this practice
through his daughter's fourteenth year of age. Garcia also learned that Mateo was on
community supervision until February 2004 and that he was an alcoholic who was
attending Alcoholics Anonymous meetings

 In June of 2002, after having had a child with Mateo, Garcia and Mateo moved
into Mateo's house. Garcia noted that a May 19, 2000 order required her to inform
Harding "as soon as practical," but in no more than forty days, if she and another
person started living together. Although she eventually informed Harding that she
was living with Mateo, Garcia conceded that she did not comply with the notice
provision of the order. When she and Harding first discussed the letter, Harding did
not object to the child living with Mateo.

 Garcia also explained that, in 2001 and 2004, she took two eight-hour classes
to become a certified chaperon for a registered sex offender when the offender is
present with children. However, although a term of Mateo's community supervision
did not allow him to be alone with children, Garcia conceded that she had left the
child alone with Mateo and, after Mateo completed community supervision, she could
not "even count" how many times she left the child alone with Mateo. 

 Garcia initially testified that she had never made bad choices as a parent and
that it was a "good decision" to introduce her children to a registered sex offender. 
However, she subsequently conceded that it had not been a good choice to introduce
a registered sex offender to the child, noting that Mateo was not a "good role model,"
and, by introducing her children to Mateo, she had placed her "children's safety in
jeopardy." Garcia also conceded that it was a mistake to allow Mateo to spank the
child, agreeing that a person who had sexually assaulted his daughter should not be
administering corporal punishment. She also stated that it was not appropriate for
Mateo to be involved in the "moral upbringing" of the child. Nevertheless, Garcia
stated that Mateo was the "overall leader" of her home. 

 Garcia also explained that on January 23, 2005, she was arrested for the offense
of assault, explaining that it involved an altercation with Mateo. She explained,
however, that the case was dismissed. Nevertheless, the police report introduced into
the record demonstrates that the altercation between Garcia and Mateo involved
physical violence.

 Garcia conceded that it was her fault that the child failed first grade. However,
she explained that it was not until after the child had failed first grade that she learned
that he suffered from dyslexia. Garcia concluded that it was in the child's best
interest for her to have the exclusive right to designate the child's primary residence
because Harding does not emotionally support or love the child, he alienates her from
the child, he knew that the child suffered from dyslexia but withheld the information
from others, he did not visit the child enough, he moved to Ohio, and the child had
always lived with her.

Standard of Review

 We review a trial court's decision to modify conservatorship under an abuse
of discretion standard. Monroe v. Alternatives in Motion, 234 S.W.3d 56, 64 (Tex.
App.--Houston [1st Dist.] 2007, no pet.). However, a jury's findings underlying a
conservatorship decision are subject to ordinary legal and factual sufficiency review. 
Alexander v. Rogers, 247 S.W.3d 757, 761 (Tex. App.--Dallas 2008, no pet.).

 We will sustain a legal sufficiency or "no-evidence" challenge if the record
shows one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence offered
to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. 
City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal
sufficiency review, a court must consider evidence in the light most favorable to the
verdict and indulge every reasonable inference that would support it. Id. at 822. If
the evidence allows only one inference, neither jurors nor the reviewing court may
disregard it. Id. However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the fact-finder must be allowed to
do so. Id. A reviewing court cannot substitute its judgment for that of the fact-finder,
so long as the evidence falls within this zone of reasonable disagreement. Id. 

 In conducting a factual sufficiency review, we must consider, weigh, and
examine all of the evidence that supports or contradicts the fact-finder's
determination. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
We may set aside a verdict only if the evidence supporting it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong or unjust. Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986). When conducting a factual sufficiency review, we
must not merely substitute our judgment for that of the fact-finder. Golden Eagle
Archery v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). The fact-finder is the sole
judge of the credibility of witnesses and the weight to be given to their testimony. Id.

Child Custody

 In two issues, Garcia argues that the evidence is legally and factually
insufficient to support the jury's findings that appointing Harding as joint managing
conservator with the exclusive right to designate the primary residence of the child
was in the child's best interest because "the mere fact that [the child] resides with a
registered sex offender is not sufficient to support a change in either conservatorship
or custody absent additional evidence showing present or potential harm to the child." 
Garcia asserts "there was no evidence . . . presented to the jury which indicated that
Mateo engaged in any inappropriate conduct or activity in regard to [the child]."

 In determining the issue of conservatorship, the best interest of the child is
always the primary consideration. Tex. Fam. Code Ann. § 153.002 (Vernon 2002);
Lenz v. Lenz, 79 S.W.3d 10, 14 (Tex. 2002). The public policy of this state is to (1)
assure that children will have frequent and continuing contact with parents who have
shown the ability to act in the best interest of the child, (2) provide a safe, stable, and
nonviolent environment for the child, and (3) encourage parents to share in the rights
and duties of raising their child after the parents have separated or dissolved their
relationship. Tex. Fam. Code Ann. § 153.001(a) (Vernon 2002). The fact-finder
designates which managing conservator will have the exclusive right to designate the
child's primary residence. Id. § 153.134(b)(1) (Vernon Supp. 2008); see also id. §
105.002(c)(1) (Vernon Supp. 2008) (noting that trial "court may not contravene a jury
verdict on" appointment of joint managing conservators and determination of primary
residence of child).

 A petitioner can obtain modification of an order that provides for the
appointment of a conservator for a child or provides the terms and conditions of
conservatorship if the petitioner demonstrates that modification would be in the best
interest of the child and that the circumstances of the child, a conservator, or other
party affected by the order have "materially and substantially changed" since the date
of the rendition of the order. Id. § 156.101 (Vernon Supp. 2008). The party seeking
modification has the burden to establish these elements by a preponderance of the
evidence. Zeifman v. Michels, 212 S.W.3d 582, 589 (Tex. App.--Austin 2006, pet.
denied); Agraz v. Carnley, 143 S.W.3d 547, 552 (Tex. App.--Dallas 2004, no pet.). 
 In determining the best interest of the child, courts have generally considered
the nine, nonexclusive factors set out in Holley v. Adams, 544 S.W.2d 367, 371-72
(Tex. 1976). These factors include (1) the desires of the child, (2) the emotional and
physical needs of the child now and in the future, (3) the emotional and physical
danger to the child now and in the future, (4) the parental abilities of the individuals
seeking custody, (5) the programs available to assist these individuals to promote the
best interest of the child, (6) the plans for the child by these individuals or by the
agency seeking custody, (7) the stability of the home or proposed placement, (8) the
acts or omissions of the parent, which may indicate that the existing parent-child
relationship is not a proper one, and (9) any excuse for the acts or omissions of the
parent. Id. The remarriage of a parent is also a consideration in determining a child's
best interest. In re C.Q.T.M., 25 S.W.3d 730, 734 (Tex. App.--Waco 2000, pet.
denied); In re Marriage of Chandler, 914 S.W.2d 252, 254 (Tex. App.--Amarillo
1996, no writ). Poisoning a child's mind against a parent or hampering a child's
ability to favorably associate with the other parent may further affect a child's best
interest. Chandler, 914 S.W.2d at 254. The Second Court of Appeals has explained
that "'it is beyond question that sexual abuse is conduct that endangers a child's
physical or emotional well-being.'" In re R.W., 129 S.W.3d 732, 742 (Tex.
App.--Fort Worth 2004, pet. denied) (quoting In re R.G., 61 S.W.3d 661, 667 (Tex.
App.--Waco 2001, no pet.), disapproved of on other grounds, 96 S.W.3d 256 (Tex.
2002)). The court added, "[E]vidence of sexual abuse of one child is sufficient to
support a finding of endangerment with respect to other children." Id. 

 In this case, Garcia conceded that she had placed her "children's safety in
jeopardy" by living with and marrying a registered sex offender. See R.W., 129
S.W.3d at 743 (finding that conflicting evidence of appellant's prior sexual abuse of
children supported termination of his parental rights, under clear and convincing
burden of proof, because "based on the nature of the alleged [sexual] misconduct, the
jury could infer both a present and future danger to [the child's] well-being");
Chandler, 914 S.W.2d at 254 (reasoning that remarriage is change "in the child's
home environment [which may] supply ground for redesignating managing
conservators"). Garcia also conceded that she could not "even count" the number of
times that she had left the child alone with Mateo, a registered sex offender who had
pleaded guilty to committing the offense of indecency with a child against his
daughter. See Tex. Fam. Code Ann. § 153.001(a) (Vernon 2002) (stating that public
policy of this state is to provide "safe, stable, and nonviolent environment for the
child"); Holley, 544 S.W.2d at 372 (stating that courts must consider "emotional and
physical danger to the child now and in the future"). From this evidence, the jury
could have reasonably found, that it was in the child's best interest to appoint Harding
as joint managing conservator with the exclusive right to establish the primary
residence of the child.

 Although Garcia asserts that Mateo's "mere status as a registered sex offender"
alone constitutes legally insufficient evidence for modifying the conservatorship,
additional evidence supports the jury's finding. Garcia conceded that it was her fault
that the child failed first grade and, under her care, the child had continued to struggle
in academics. See Holley, 544 S.W.2d at 372 (noting that court must consider
emotional and physical needs of child now and in future and parental abilities of
individuals seeking custody); Eason v. Eason, 860 S.W.2d 187, 190-91 (Tex.
App.--Houston [14th Dist.] 1993, no writ) (stating that child's declining school
grades helped support modification of conservatorship). Garcia also hampered
Harding's ability to communicate with and to see the child. See Chandler, 914
S.W.2d at 254 (reasoning that hampering parent's ability to favorably associate with
child affects child's best interest). Moreover, there is evidence of family violence in
the home of Garcia and Mateo. Based on the pertinent Holley factors and all the
evidence, viewed in the light most favorable to the jury's findings, we hold that the
evidence supporting the modification of the conservatorship order would enable
reasonable and fair-minded people to reach the findings under review and, thus, was
legally sufficient.

 In regard to her factual sufficiency point, Garcia did testify that Harding had
alienated her from the child, and it was shown that Harding had been previously
charged with the Class C misdemeanor offense of assault. Garcia also emphasized
that the child had lived with her for 10 years and that there is no evidence that the
child has been sexually assaulted. Again, however, Garcia conceded that by
introducing Mateo, a registered sex offender, to the child, she had placed the child's
"safety in jeopardy." She also conceded that Mateo was not a "good role model" and
should not be involved in the child's "moral upbringing." Considering all the
evidence supporting and contradicting the findings, we cannot say that the jury's
findings are so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Although the child will have to move from his more familiar home
with Garcia in Houston to a new home with Harding in Ohio, there was evidence
presented to support an implied finding that the child will be well-cared-for in
Harding's home. Accordingly, we hold that the evidence is factually sufficient to
support the jury's findings. 

 We further hold that the trial court did not abuse its discretion in appointing
Harding as a joint managing conservator with the exclusive right to establish the
primary residence of the child.

 We overrule appellant's first and second issues.

Sanctions

 In a single cross-point, Harding requests that this Court sanction Garcia for
bringing a frivolous appeal. We may award just damages to a prevailing party if we
objectively determine, after considering "the record, briefs, or other papers filed in
the court of appeals," an appeal is frivolous. Tex. R. App. P. 45; Smith v. Brown, 51
S.W.3d 376, 380-81 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). Rule 45
provides:

 If the court of appeals determines that an appeal is frivolous, it
may--on motion of any party or on its own initiative, after notice and
a reasonable opportunity for response--award each prevailing party
just damages. In determining whether to award damages, the court
must not consider any matter that does not appear in the record, briefs,
or other papers filed in the court of appeals.


Tex. R. App. P. 45. An appeal is frivolous when the record, viewed from the
perspective of the advocate, does not provide reasonable grounds for the advocate
to believe that the case could be reversed. Smith, 51 S.W.3d at 381. The decision
to grant appellate sanctions is a matter of discretion that an appellate court exercises
with prudence and caution and only after careful deliberation. Id. 

 Here, the facts demonstrate that there was some reasonable basis for Garcia's
counsel to believe that the case could possibly have been reversed. 

 Although we have held that the evidence is legally and factually sufficient to
support the jury's findings that Harding should be appointed as joint managing
conservator with the exclusive right to establish the primary residence of the child,
Garcia, in support of her argument, did point out that Harding had been previously
charged with the Class C misdemeanor offense of assault, the child had lived with
her for 10 years with no evidence of sexual abuse, and the child would be moved
from his home of 10 years to another state. Although Garcia does not prevail on her
appeal, we cannot conclude that her appeal is objectively frivolous.

 Accordingly, we deny Harding's request and overrule his single cross-point. 

Conclusion

 We affirm the order of the trial court.

 

 


 Terry Jennings

 Justice

 

Panel consists of Justices Jennings, Bland, and Wilson. (3)

1. See Tex. Fam. Code Ann. § 156.101 (Vernon Supp. 2008).
2. The evidence showed that Mateo had pleaded guilty to the offense of indecency with 

 a child. See Tex. Penal Code Ann. § 21.11(a) (Vernon 2003).
3. The Hon. Davie L. Wilson, retired Justice, Court of Appeals, First District of Texas
at Houston, participating by assignment.