**CHASEWOOD OAKS CONDOMINIUMS HOMEOWNERS ASSOCIATION, INC., Appellant,**

v.

**AMATEK HOLDINGS, INC. d/b/a Monier Co., Appellees.**

No. 2–97–382–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 24, 1998.

Scott, Bowman & Stella, Russell J. Bowman, Dallas, for Appellant.

Gwinn & Roby, Benton J. Barton, Dallas, for Appellee.

Before DAY, DAUPHINOT and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellant Chasewood Oaks Condominiums Homeowners Association appeals the trial court's "death penalty" sanction dismissing its products liability action against Appellee Amatek Holdings, Inc. d/b/a Monier Company. We affirm the trial court.

### BACKGROUND

Appellee is the manufacturer of the concrete roofing tiles used to roof the Chasewood Oaks condominiums. After a hail storm on April 28, 1992, Appellant noticed that some of the tiles were cracked and the corners were broken off of others. Appellant replaced the roof at a cost of approximately $220,000 and claimed the loss against its homeowner's insurance policy. After nearly a year of disputing liability, the carrier, Nationwide Insurance, paid Appellant approximately $108,000 to settle the claim. Nationwide's independent engineer represented that the damage was due to a latent defect in the tiles, not the storm. Nationwide then filed a subrogation action against Appellee in Appellant's name but is not named as an individual plaintiff. The homeowners' association apparently also sought separate recovery for the balance of the amount it did not recover from Nationwide. Appellant[1] filed its original petition on March 16, 1994, alleging negligence, fraud, negligent misrepresentation, breach of warranty, breach of the duty of good faith and fair dealing, and violations of the DTPA.

After several years and a number of motions and hearings relating to discovery disputes, the trial court granted Appellee's motion to dismiss as sanctions and dismissed Appellant's cause of action on August 29, 1997.

### DEATH PENALTY SANCTIONS

Discovery sanctions are authorized by Texas Rule of Civil Procedure 215. Specifically, the trial court is authorized to strike a party's pleadings and dismiss an action with or without prejudice, which is often called "death penalty" sanctions, under subsection (2)(b)(5) of rule 215. We review the trial court's actions for an abuse of discretion. *See Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). However, the trial court's power to dismiss a party's action is not unlimited. Due process concerns mandate that this remedy be used sparingly. *See Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705–08, 102 S.Ct. 2099, 2105–07 (1982); *Societe Internationale v. Rogers*, 357 U.S. 197, 209–10, 78 S.Ct. 1087, 1094 (1958). By imposing death penalty sanctions, the court effectively renders judgment without respect to the merits of the case and deprives litigants of their "day in court." *See Hamill v. Level*, 917 S.W.2d 15, 16 (Tex.1996). Thus, death penalty sanctions should only be imposed in the face of flagrant bad faith or conduct that justifies a presumption that the offending party's claims or defenses are meritless. *See id.; TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991).

The trial court abuses its discretion by dismissing a case unless such extreme sanctions are "just." TEX.R. CIV. P. 215(2)(b); *see Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992); *TransAmerican*, 811 S.W.2d at 916–17. Death penalty

---

**1.** We will refer to Appellant in the singular because only the homeowners' association is pled as a plaintiff.

sanctions are "just" if the record reveals that:

1. There exists a direct relationship between the offensive conduct and the sanction imposed;
2. The sanction imposed is not excessive in the circumstances, i.e. "The punishment must fit the crime";
3. The trial court first imposed lesser sanctions to test their effectiveness at securing compliance, deterrence, and punishment of the offense; and
4. The sanctioned conduct justifies a presumption that the party's claim or defense lacks merit.

See *Chrysler Corp.*, 841 S.W.2d at 849–50 (citing *TransAmerican*, 811 S.W.2d at 917, 918); *Andras v. Memorial Hosp. Sys.*, 888 S.W.2d 567, 571 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

## HISTORY OF THIS CASE

Appellee served Appellant with interrogatories and requests for production on May 10, 1995. Appellant responded a month later with objections, including objections to every interrogatory that the set required more than thirty responses, but provided no responsive information. After a number of letters and requests from Appellee, Appellant served its first amended objections and answers in May 1996. At some point, the case was set on the court's dismissal docket, but the court signed an order retaining the case on its active docket on November 8, 1996. On December 5, 1996, the parties and the court held a status conference, which resulted in an agreed pretrial scheduling order and a trial date of April 28, 1997. At that hearing, the court also ordered Appellant to make full and complete answers and production to Appellee's discovery within 60 days.

More than 90 days later, Appellant had not complied and Appellee filed a motion to dismiss and alternative motion for continuance on March 13, 1997. The trial court held a hearing on the motion on April 11, 1997. The court denied Appellee's motion to dismiss, either for want of prosecution or as discovery sanctions, but ordered once again that Appellant provide complete responses to

Appellee's outstanding discovery from May 1995 by May 15, 1997, and apparently reset the trial date for September 29, 1997. On May 19, Appellant filed a motion for extension of time to file the ordered supplemental discovery. Appellee opposed the motion and again moved the court to dismiss the action or impose other appropriate sanctions and assess attorneys' fees relating to the discovery dispute against Appellant.

The trial court held a hearing on Appellant's motion on June 5, 1997 and ultimately granted an extension of time. Appellant called its designated corporate representative, Pauline Buchanan, to testify at the hearing. She became a member of Appellant's board of directors in February 1996, but testified that the board was unaware the association was even involved in a lawsuit over the roof until April 20, 1997. Buchanan and Appellant's counsel blamed the association's hired management company for failing to inform the board of the lawsuit or obtain the requested information from it. The management company had been discharged at the time of the hearing, and a direct line of communication was set up between Buchanan and counsel for Appellant.

After Buchanan testified, the trial court expressed its frustration with the case and asked her to carry a message back to the association and the homeowners that they must immediately comply with the court's orders or the case would be dismissed.

> The Court has been frustrated by the poor cooperation that your counsel has received. Now, I don't know to whom to point the finger. However, it would seem to the Court that whatever representatives you choose, "you" as homeowner, "you" as the association choose, you're going to have to see to it that they do what needs to be done.
>
> This Court has been extraordinarily patient with the problems that [Appellant's counsel] has had in getting the information that he needs from his clients or at least from the homeowners. But I want you to send a message back to the other homeowners, and that is that [the court's] patience is just about worn out, and that if

the Court were to grant the relief that the defendants have sought the lawsuit would be over. The Court hasn't done that because it has bent over backward to give you folks an opportunity to make your case.

The trial court also noted that the two week extension Appellant sought in its motion had in effect already passed, and Appellant was asking at the hearing for another six weeks to comply. Appellant represented that there were 248 individual homeowners it would have to obtain information from. The trial court reluctantly extended all dates in the pretrial order, including the date set for trial, by six weeks. However, the trial court also imposed sanctions against Appellant by abating all its propounded discovery until Appellant fully complied with Appellee's outstanding discovery. The court issued a written order for Appellant to fully comply with Appellee's discovery no later than June 20, 1997, which stated that failure to comply would result in dismissal of the cause with prejudice.

Appellee later filed a motion to enforce the trial court's discovery order, on which the trial court held a hearing on July 24, 1997. Appellee complained at that hearing primarily about Appellant's failure to secure appropriate answers to interrogatories from each of the individual homeowners since the order was issued. In its response to the motion, Appellant stated that there existed a total of 104 individual homeowners and that 83 of them had responded to the interrogatories, suggesting that its "herculean effort" should be rewarded, not punished. Appellant offered no explanation for the inconsistency in the number of individuals it had earlier represented to the court or to Appellee. Furthermore, many of the responses were nonsense, such as: "Are you out of your mind?"; "Get real"; "Go back to mgmt. co."; and "Are you kidding me?"

In its response and at the hearing, Appellant argued vigorously that all maintenance and leaks were the responsibility of the homeowners' association, and that, therefore, the individual homeowners did not have any relevant information. However, those statements directly contradicted assertions made during the June 5 hearing and in Appellant's first amended responses to Appellee's interrogatories. For instance, in response to an interrogatory requesting information about any earlier leaks from the roof or the tiles, Appellant responded, subject to an objection that it was irrelevant, "Plaintiff does not have this information at this time. The individual homeowners were responsible for the type of minor repairs sought by this Interrogatory." Further, in the June 5 hearing, the court stated, "But the underlying issue it seems to me is the management company only has that information that it obtains from the homeowners," to which Appellant replied, "That is correct." The court then clarified, "So the homeowners are the real source here." Appellant did not contradict that understanding until much later, when it sought to avoid interviewing the individual homeowners.

At the conclusion of the July 24 hearing, however, the trial court declined to impose any sanctions against Appellant for the failure to acquire answers from the individual homeowners yet, but indicated to the parties that the case would go to trial on November 10, 1997, whether the parties were ready or not. The court further invited Appellee to file an amended motion detailing any other alleged discovery abuses, to be taken up at a later hearing. The court again made an effort to allow Appellant to cure any deficiencies by ordering Appellee to re-plead its motion with any and all additional discovery complaints and then ordering that Appellant would be allowed two weeks thereafter to respond and cure. The court then set another hearing for August 14, 1997 to deal further with the dispute.

Appellee's supplemental motion to compel asserted, among others, the following areas of discovery abuse:

- The verifications to every interrogatory answer were defective, and the error had been pointed out in at least two prior motions but had not been cured;

- Many of the original interrogatory questions were responded to with "voluminous objections that appear to have been made in bad faith." Although some supplemental information had been provided, all of it

was made expressly subject to the original objections;

■ Appellee uncovered a large amount of information responsive to its interrogatories and requests for production (largely relating to Nationwide's investigation of the original claim) through its own investigation and subpoenas of third party records that Appellant failed to produce or respond to;

■ Appellant only produced the "Master Deed" to the condominium property after Appellee's fourth motion for sanctions, despite being specifically requested for more than a year;

■ Appellant refused to produce or allege any information relevant to its dealings with Appellee that would have created an actionable misrepresentation or substantiate a duty of good faith and fair dealing; and

■ Evidence that was potentially favorable to Appellee's defensive theories was contained in the information Appellant withheld and Appellee unveiled on its own.

Appellee concluded its motion by once again urging the court to dismiss the case and assess its attorneys' fees incurred as a result of the discovery problems generated by Appellant. Appellant responded, both in its motion and at the hearing, by essentially asserting that it had produced everything in its possession and fully complied with all discovery requests.

The trial court concluded the hearing by dismissing the case. The court stated that it had given a "great deal of thought" to the situation and had considered lesser sanctions, but found that it had no choice but to dismiss the action. The court's order recites:

The Court, after considering the pleadings on file, arguments of counsel, and the history of this litigation, and after considering the imposition of lesser sanctions, is of the opinion that the Motion [to compel or dis-

miss] is well-taken, and should be granted as follows. It is therefore,

ORDERED, ADJUDGED, AND DECREED that, based upon a history of discovery abuse demonstrated by Plaintiffs and detailed in both the pleadings on file in this case and in hearings before this Court, this lawsuit shall be dismissed.[2]

### PROPRIETY OF DEATH PENALTY SANCTIONS

■ Both the United States and Texas Supreme Courts have made it clear that death penalty sanctions are a remedy of last resort to be employed only in the most egregious of circumstances. *See Insurance Corp. of Ir.*, 456 U.S. at 705–08, 102 S.Ct. at 2105–07; *Hamill*, 917 S.W.2d at 16. The trial court did everything in its power to allow Appellant to cure what it deemed deficiencies and bad faith answers for nearly a year in this case. We cannot find an abuse of discretion in the trial court's decision that Appellant acted with flagrant bad faith in abusing the discovery process.

■ Appellant took inconsistent positions on numerous occasions as to whether its client was the homeowners association or the individual homeowners, depending on the circumstances and the information sought by Appellee.

■ Appellant misrepresented the number of homeowners (and therefore the magnitude of the task of interviewing them) to the court and to Appellee, with no explanation or apology for the misrepresentation.

■ Appellant responded to a number of Appellee's interrogatories with untenable, and likely bad faith, objections. Appellant carried these objections into its response to Appellee's motion to compel despite the trial court's orders to comply.[3]

■ Appellant represented to the court that it had turned over all of the homeowners association's business records, contending that was the entirety of the documents subject to its control or custody. Howev-

---

2. Although the trial court dismissed the suit without prejudice, the statute of limitations for Appellant's claim had already run at that point, preventing Appellant from re-filing its suit.

3. "The reason Defendant keeps filing these frivolous discovery motions is that the facts of this

matter do not bear out the frivolous statute of limitations defense that Defendant is trying to assert." As the trial court had already twice ordered Appellant to fully respond to the propounded discovery, obviously the trial court did not believe Appellee's motions were frivolous.

er, although not properly pled, the action was at least in part a subrogation action by Nationwide, which clearly had control and custody of the inspections and investigation reports generated with respect to the claim, which were directly responsive to a number of Appellee's requests for production.

These instances, along with a review of the entire record, bear out the trial court's conclusion that it was left with no choice but to assume Appellant either had no claim or was dragging its feet in mustering evidence of one. In other words, Appellant's conduct justified a presumption that its claim lacked merit. *See Hamill,* 917 S.W.2d at 16.

Further, the trial court threatened Appellant with dismissal at least three times, issued at least three orders to comply with discovery, and stayed all of Appellant's discovery against Appellee until Appellee's requests were fully met. Thus, the court tested lesser sanctions. *See id.* at 16 n. 1; *Chrysler Corp.,* 841 S.W.2d at 850.

■ Finally, we find that when, as here, a plaintiff files an action and then actively frustrates all legitimate attempts by a defendant to define the cause of action and investigate potential defenses, there is a direct relationship between the plaintiff's conduct and the trial court's dismissal of the action. *See TransAmerican,* 811 S.W.2d at 917. A party who will not "play by the rules" even after repeated orders to do so should not be allowed to play at all. Nor do we find the sanction in this case excessive in light of the repeated violations of the court's orders and misrepresentations to the court. *See id.* Indeed, at the time of the dismissal, trial was set for three months later and neither party had conducted a single deposition. All of Appellant's propounded discovery remained abated because Appellant still refused to acknowledge the deficiencies in its responses. Because the trial court refused to continue the trial any further, it is difficult to imagine how Appellant could have been prepared for trial in any event.

We have reviewed the entire record in light of the grave nature of the sanctions imposed and the limits on the trial court's discretion as interpreted by the supreme court. However, we find the circumstances of this case justify the extreme measures taken. We hold that the trial court did not err by granting Appellee's motion to dismiss as discovery sanctions.

We overrule Appellant's points.

### CONCLUSION

We hold that the trial court did not err by dismissing Appellant's claim as sanctions for discovery abuses. The trial court's judgment is affirmed.