Kenneth J. MAGNUSON, Appellant,

v.

Randy MULLEN, Electronic Data Systems, Inc. a/k/a EDS, and Other Unknown Employees of EDS, Appellees.

No. 2–00–216–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 17, 2002.

Baltasar D. Cruz, Dallas, for Appellant.

David R. Deitchman, Electronic Data Systems Corp., Plano, for Appellee.

Panel B: DAY, DAUPHINOT, and GARDNER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

Appellant Kenneth J. Magnuson appeals from the trial court's judgment dismissing his suit against Appellees Randy Mullen, Electronic Data Systems, Inc. a/k/a EDS, and other unknown employees of EDS (collectively, Appellees) with prejudice to its refiling. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Magnuson was hired by EDS as a systems administrator on August 21, 1995.

In October 1997, Mullen, Magnuson's manager at EDS, prepared a "Performance Improvement Plan" (PIP) for Magnuson. The PIP stated that Magnuson was either tardy or absent from work without excuse on forty-five occasions in 1997. On February 26, 1998, Appellant's employment with EDS was terminated.

Magnuson filed suit against Appellees on February 26, 1999, alleging that Mullen defamed him by including false statements concerning his absences from work in the PIP and that EDS was grossly negligent in failing to properly train Mullen. A copy of Magnuson's petition was not served on Appellees, however, until Magnuson filed his first amended petition on April 1, 1999.

On October 7, 1999, Appellees served Magnuson with requests for disclosures and for production. In a cover letter sent with the discovery requests, counsel for Appellees asked Magnuson to provide convenient dates in late November for his deposition in this case. On October 12, Magnuson filed a motion for enlargement of time and request for reasonable accommodations in the trial court. Magnuson claimed to be a disabled person under the Americans With Disabilities Act (ADA) because of a "severe and chronic orthopedic neck disorder" caused by brain surgery in 1993. The motion provides, in relevant part:

Plaintiff respectfully gives the Court notice of such disability. A request for reasonable accommodations, because he is acting as Pro Se in this matter, and if pleadings become due by Plaintiff, at times when he is affected by the foresaid [sic] disability, the Plaintiff may have to request additional enlargements of time. Otherwise, he would not be able to meet the Court's deadlines for the proper filings of such pleadings, and would therefore be denied participation, and the full or equal benefits of services offered by

this Court, if such requested enlargements of time are not granted.

On October 26, 1999, after apparently receiving no response from Magnuson to the previous letter, Appellees noticed Magnuson's deposition to take place on November 18 at 9:30 a.m. An affidavit of nonappearance reflects that Magnuson did not appear for his deposition at the scheduled time on November 18 and contains the following remarks by counsel for Appellees:

At this time we are assuming that Mr. Magnuson is not going to show up for the deposition. He did indicate to my administrative assistant on Friday, November the 12th, that he planned to be out of town. And my administrative assistant at my direction said that we would agree to move the deposition to allow for that to November the 29th or 30th. Mr. Magnuson's response to my administrative assistant was he absolutely refused to present himself for deposition at any time until after he took the deposition of Mr. Mullen and received answers to discovery. Let the record reflect that as of this point in time Mr. Magnuson has never filed a notice for the deposition of Randy Mullen or anyone else, nor has he ever inquired about taking any such deposition nor has he filed any discovery or indicated any intent to file any discovery.

Indeed, in a letter dated November 15, 1999, Appellees' counsel informed Magnuson that, because he refused to appear for deposition at another time, she would not agree to pass his deposition scheduled for November 18. Additionally, counsel notified Magnuson that, unless she received his responses to the request for disclosures and request for production by November 23, "I will have no choice but to file a Motion to Compel, which may also include a request for sanctions."

On January 24, 2000, the trial court notified the parties that the case had been set on the court's trial docket for March 28, 2000. On January 31, Appellees filed a motion to compel responses to discovery and appearance for deposition and for sanctions, contending that Magnuson's conduct in this case as well as in his suit against EDS currently pending in federal court reveals "a pattern and practice of blatant dilatory tactics and purposeful disregard of court orders." In addition to Magnuson's refusal to respond to Appellees' discovery requests or to appear for his deposition in the instant case, Appellees pointed to his failure to comply with the trial court's orders regarding discovery in the federal case. In that case, the court granted EDS's motion to compel answers to discovery and for sanctions and ordered Magnuson to provide discovery responses by 5:00 p.m. on January 28, 2000, and to pay EDS $250 by December 24, 1999. Magnuson's failure to abide by the court's order in either regard prompted EDS to file a motion to dismiss the federal case with prejudice.

By fiat, the trial court set Appellees' motion to compel for a hearing on February 18, 2000. Magnuson neither responded to the motion nor appeared for the hearing. Instead, Magnuson filed a motion for continuance on February 18, asking the court to grant him an additional 120 days to respond to Appellees' discovery requests and to retain counsel. Magnuson claimed to have been prejudiced by the "untimely withdraw[al]" of his counsel in the federal case, which forced him to pursue his claims pro se. Additionally, Magnuson stated that he was involved in an automobile accident on January 13, 2000, sustaining injuries to his neck and back. According to Magnuson, these injuries aggravated his existing medical condition and limited his ability to perform the

following tasks for long periods of time: driving or traveling in an automobile, sitting up in a chair and reading or working at the computer, and standing or walking. Magnuson also claimed to suffer from severe headaches, ringing in the ears, neck pain, and sleeplessness. Magnuson asserted that his inability to obtain counsel along with his physical limitations necessitated an extension of time in which to respond to Appellees' discovery requests.

By its order signed February 18, 2000, the trial court granted Appellees' motion to compel and request for sanctions, ordering Magnuson to appear for deposition on February 29 at 9:00 a.m., to provide Appellees with a fully executed authorization to release confidential information as well as full and complete responses to Appellees' discovery requests on or before 5:00 p.m. on February 24, and to pay $1,000 in costs to EDS on or before five days from the date of the order. Citing an inability to serve the February 18th order on Magnuson at his residence, the Appellees filed a motion for substituted service on February 24, requesting that the court allow service by affixing a copy of the order to Magnuson's front door. Attached to the motion was process server Glenn Glasscock's affidavit of attempted service, detailing nine unsuccessful attempts to serve Magnuson at his home between February 18 and February 22. During one such attempt on the evening of February 21, Glasscock observed Magnuson and his roommate creeping down the hallway in an effort to avoid being seen. On February 24, the trial court ordered substituted service of the February 18th order on Magnuson by posting a copy of the order to his front door, which Glasscock accomplished on February 25, 2000.

Magnuson filed a motion for extension of time, motion for rehearing, motion to quash the February 18th order, and motion for sanctions on February 24, 2000, contending that the trial court granted Appellees' motion to compel without considering his disability, his February 18th motion for continuance, or his October 11th motion for enlargement of time. Magnuson again requested additional time to respond to discovery, adding that "any failure to reply ... has been excusable neglect due to medical reasons." In addition, Magnuson sought extensions of time "as may be needed during the pendency of this trial" and that any hearing be conducted over the telephone because of problems with his hearing. The motions were subsequently set for a hearing on March 23, 2000.

On March 1, 2000, Appellees filed a motion for sanctions and to dismiss Magnuson's action with prejudice, claiming that Magnuson had failed to comply with any part of the trial court's February 18th order. In particular, Magnuson had not yet provided responses to Appellees' discovery requests and did not appear for his deposition on February 29 as ordered. Appellees sought monetary sanctions and the dismissal of Magnuson's action with prejudice under rules 215.2 and 215.3 of the Texas Rules of Civil Procedure.[1] In support of their request for a dismissal with prejudice, Appellees pointed to Magnuson's "long history of filing frivolous pro se lawsuits which are ultimately dismissed." Specifically, Appellees claimed that, in addition to the "obstructionist tactics" employed in the federal case, Magnuson has filed at least four other pro se lawsuits since 1992, all of which were dismissed for want of prosecution. Appellees argued that Magnuson's conduct in the present case in refusing to provide discovery either upon Appellees' request or upon

1. Tex.R.Civ.P. 215.2–.3.

court order points to an "inescapable conclusion ... that [Magnuson's] claims are baseless and without merit and this lawsuit was filed in bad faith." A hearing on the motion for sanctions was set by fiat for March 23, 2000 at 2:00 p.m.

On March 23, 2000, the trial court heard evidence and arguments on Magnuson's motion for extension of time, motion for rehearing, and motion to quash the February 18th order. Turner Keith Johnson, Magnuson's chiropractor, testified concerning his treatment of Magnuson for headaches following the 1993 brain surgery and a herniated disk from the January 2000 car accident. Alfredo Alaniz, Magnuson's roommate, testified that Magnuson was debilitated and heavily medicated in November 1999, as well as after the accident in January 2000. During Magnuson's examination of his third witness, a massage therapist, the trial court noted that the hearing had gone over the one-hour time period that had been allotted for it and would have to be reset to another date. Regarding Appellees' motion for sanctions, the following exchange occurred between the trial court and counsel for Appellees, Dorothy Culham:

> MS. CULHAM: Your Honor, may I ask, will our motion still be heard too? I mean, we do have a trial setting on Tuesday in this case and I still have no depositions, no documents, no anything.
>
> THE COURT: Okay. I don't see your matter on the docket at 2:00. Is it a separate setting?
>
> MS. CULHAM: Yes, Your Honor. I had asked-I had tried to get everything set at the same time here, but Ms. Smith had 2:00 available. I had a Motion for Issuance [of] Order Nunc Pro Tunc which, of course, the Court's already dealt with, so that's off the docket, and Motion for Sanctions and [to] Dismiss Plaintiff's Action With Prejudice.

> THE COURT: Well, we may have to take it up just prior to the actual trial setting, then, that's set for next week.
>
> . . . .
>
> MS. CULHAM: ... but you say you're not-you don't have us down for March 23rd at 2:00.
>
> THE COURT: I sure don't.

At that point, Magnuson requested a thirty-day continuance, which the trial court denied, stating: "I'm not going to do that. We're going to need to conclude this matter, and it won't be today." The court then instructed the parties to visit the court coordinator, Kelly Smith, to obtain a new setting. As Smith was out of her office for the lunch hour, Appellees' counsel told Magnuson that she would meet him back at Smith's office at 1:45 p.m. to reschedule the hearing. Magnuson responded that he was not coming back and asked that the hearing be set in the afternoon. Counsel later accepted a 10:30 a.m. setting on the following day, March 24, and informed Magnuson of the setting via a message on his answering machine and a letter hand-delivered to his door at approximately 5:50 p.m. on March 23.

On March 24, 2000, the trial court resumed the hearing and, after noting Magnuson's absence from the proceedings and inquiring as to Appellees' efforts to notify him, made the following comments on the record:

> [T]he Court will note this is not, in fact, a new setting. It is merely a continuation of prior hearing which was being held Thursday morning.
>
> . . . .
>
> And the matter was received and the Court instructed the parties to see the coordinator about a time when it could be again taken up. And the Court is satisfied that notice has been given to the respondent in this matter.

At one point during the hearing, the court coordinator interrupted the proceedings and the following exchange occurred:

MS. SMITH: This is on this case. Do you know who this person is?

MS. CULHAM: I think that's the roommate, Alfredo.

THE COURT: Alfredo was the roommate.

MS. SMITH: Okay. He called today and I thought it was from your office. He said that his—Magnuson was heavily medicated and that he wanted to reset it to Monday and I received that phone call probably 10:25. And like I said, I thought it was from your office and then when I came in here and saw you in the back I was going to call him and find out what was going on because he said that he was the receptionist, so like I said, I thought it was from a law firm.

In his affidavit attached to Magnuson's motion for new trial, Alaniz stated that he contacted Smith shortly after 9:00 a.m. on March 24 and left a voice mail message, advising her that Magnuson was unable to attend the 10:30 a.m. hearing because he was "physically debilitated," stressed, in pain, and medicated. Alaniz also told Smith that Magnuson had a doctor's appointment at 11:00 a.m. that morning. According to Alaniz, when Smith returned his call at approximately 9:30 a.m., she agreed to reschedule the hearing for Monday, March 27 at 9:00 a.m.

After hearing the arguments of counsel and Glasscock's testimony concerning his repeated attempts to serve Magnuson with the February 18th order, the trial court granted Appellees motion for sanctions. In its final judgment, the trial court ordered that Magnuson take nothing by reason of his suit against Appellees and that such action be dismissed with prejudice. The trial court also ordered that Magnuson pay all costs of court to Appellees as well an additional $500 for Appellees' costs in bringing the motion for sanctions.

## ISSUES PRESENTED

Magnuson raises ten issues challenging the dismissal of his suit, contending:

(1) the trial court erred in granting Appellees' motion for sanctions without giving Magnuson an opportunity to be heard, in violation of his due process rights under the Fourteenth Amendment to the United States Constitution;

(2) the trial court exceeded its authority and abused its discretion in hearing Appellees' motion for sanctions without adequate notice of the hearing having been served on Magnuson;

(3) the trial court abused its discretion in granting Appellees' motion for sanctions before completing the hearing on Magnuson's motion for extension of time, motion for rehearing, motion to quash the February 18th order, and motion for sanctions;

(4) the trial court abused its discretion in granting Appellees' motion for sanctions;

(5) the trial court failed to make reasonable accommodations under the ADA to enable Magnuson to attend the hearing on February 18, 2000;

(6) the trial court failed to make reasonable accommodations under the ADA to enable Magnuson to attend the hearing on March 24, 2000;

(7) the trial court abused its discretion in refusing to set Magnuson's motion for enlargement of time for a hearing;

(8) the trial court's refusal to set Magnuson's motion for enlargement of time for a hearing violated Magnuson's rights to due process and equal protection under the United States and Texas Constitutions;

(9) the trial court abused its discretion in refusing to set Magnuson's motion for continuance for a hearing; and

(10) the trial court's refusal to set Magnuson's motion for continuance for a hearing violated Magnuson's rights to due process and equal protection under the United States and Texas Constitutions.

### Sanctions

 In his first four issues, Magnuson challenges the trial court's imposition of discovery sanctions. In his first issue, Magnuson contends that the trial court violated his rights to procedural due process under the Fourteenth Amendment to the United States Constitution by dismissing his claims with prejudice and imposing monetary sanctions without affording him the opportunity to be heard. Magnuson argues that the trial court "abused its discretion in conducting the hearing when it did," because he was not given a "reasonable and adequate opportunity to object or prepare a response" to Appellees' motion for sanctions, obtain witnesses to testify at the hearing, prepare and present arguments, or nonsuit his claims as a defensive measure. In his second issue, Magnuson insists that he did not receive adequate notice of the hearing under rule 21 of the Texas Rules of Civil Procedure.[2]

 The imposition of discovery sanctions is limited by constitutional due process.[3] Due process requires that a party be given an adequate opportunity to be heard in sanction proceedings.[4] Thus, the traditional due process protections of notice and hearing are also necessary before imposition of sanctions.[5] Rule 21 of the rules of civil procedure provides:

An application to the court for an order and notice of any hearing thereon, not presented during a hearing or trial, shall be served upon all other parties not less than three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court.[6]

At the outset, we note that Appellees' motion for sanctions includes a fiat signed by the trial judge indicating that the motion would be heard on March 23, 2000. It is undisputed by Magnuson that he received service of the motion and notice of the hearing on March 1, 2000, as reflected in the certificate of service. The record does not, however, reflect that Magnuson filed a response to the motion, although he had ample opportunity to do so. In addition, we point out that Magnuson does not contend that he received inadequate notice of the hearing set for March 23. Rather, his complaint is that he was not properly notified when the hearing was reset to March 24. The record reveals that the hearing conducted on that date was a continuation of the hearing held on March 23, which could not be completed due to time constraints. Magnuson had been notified that Appellees' motion for sanctions was to be heard on March 23, although there appeared to be some confusion as to what time the hearing was scheduled on the trial court's docket. Magnuson acknowledges that he received notice of the March 24th hearing through a message on his answering machine and a letter from Ap-

---

2. Tex.R.Civ.P. 21.

3. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991).

4. *Hayes v. Hayes,* 920 S.W.2d 344, 346 (Tex. App.-Texarkana 1996, writ denied) (citing *Ei-*

*chelberger v. Eichelberger,* 582 S.W.2d 395, 398–400 (Tex.1979)).

5. *Hayes,* 920 S.W.2d at 346–47.

6. Tex.R. Civ. P. 21.

pellees' counsel posted to his door on the evening of March 23. He complains, however, that he was not given three days' notice of the hearing, as required by rule 21.

For guidance, we look to cases evaluating complaints of improper and untimely notice of hearings on motions for summary judgment. Rule 166a of the rules of civil procedure requires that the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing.[7] In this context, courts have held that the twenty-one day requirement for notice of hearing does not apply to a resetting of the hearing, provided the nonmovant received notice twenty-one days before the original hearing.[8] The reasoning behind the twenty-one day requirement in rule 166a(c) is to give the nonmovant sufficient time to prepare and file a response for the original setting.[9] By rescheduling a hearing, the movant is actually giving the nonmovant additional time to respond.[10] Therefore, a party need only give reasonable notice that a hearing on a motion for summary judgment has been rescheduled.[11] In *International Insurance Co. v. Herman G. West, Inc.*, this court stated: "After a party has been served with notice of a motion for summary judgment in one term of court the motion may be heard at the later term without service of another notice. All that is required is reasonable notice of the hearing thereon."[12] We defined reasonable notice in *International Insurance* to mean at least seven days before the hearing on the motion, reasoning that a nonmovant may only file a response to a motion for summary judgment no later than seven days prior to the hearing.[13]

Rule 21 requires that a party be afforded at least three days' notice of a hearing date.[14] Here, Magnuson received approximately three weeks' notice of the March 23rd hearing on Appellees' motion for sanctions. We hold that the three-day notice requirement did not apply when the March 23rd hearing was reset to March 24. Additionally, we note that another basis exists for our conclusion that Magnuson received adequate notice. Rule 21 authorizes the trial court to shorten the required notice period.[15] A trial court's action in conducting a hearing on a motion before the three-day notice period has expired will not be disturbed on appeal absent an abuse of discretion.[16] In exercising its discretion to shorten the rule 21 notice period, the trial court is free to examine and determine the exigent circumstances present in each particular case.[17] The court in the instant case instructed the parties to reschedule the

7. Tex.R. Civ. P. 166a(c).

8. *LeNotre v. Cohen*, 979 S.W.2d 723, 726 (Tex. App.-Houston [14th Dist.] 1998, pet. denied); *Birdwell v. Texins Credit Union*, 843 S.W.2d 246, 250 (Tex.App.-Texarkana 1992, no writ).

9. *LeNotre*, 979 S.W.2d at 726.

10. *Id.*

11. *Id.*

12. 649 S.W.2d 824, 825 (Tex.App.-Fort Worth 1983, no writ) (citing *Thurman v. Fatherree*, 325 S.W.2d 183 (Tex.Civ.App.-San Antonio 1959, writ dism'd)).

13. *Int'l Ins. Co.*, 649 S.W.2d at 825; *see* Tex R. Civ. P. 166a(c).

14. Tex.R. Civ. P. 21.

15. *Id.*

16. *Buruato v. Mercy Hosp. of Laredo*, 2 S.W.3d 385, 387 (Tex.App.-San Antonio 1999, pet. denied).

17. *Id.* at 388.

March 23rd hearing to another time as close to the trial setting as possible. The trial was set to commence on Tuesday, March 28, 2000. With only two business days remaining before the trial date, we cannot conclude that the trial court abused its discretion in hearing Appellees' motion for sanctions on Friday, March 24. We overrule Magnuson's first two issues.

■ In his third issue, Magnuson contends that the trial court abused its discretion in granting Appellees' motion for sanctions before completing the hearing on Magnuson's motion for extension of time, motion for rehearing, and motion to quash the February 18th order. We disagree. As discussed previously, the trial court heard evidence and arguments regarding Magnuson's motions on March 23. After the hearing exceeded the allotted time, the trial court interrupted Magnuson's examination of his third witness and announced that the presentation of evidence would have to continue at a later date. When the hearing resumed on March 24, Magnuson was absent from the proceedings. Thus, the trial court appropriately took up Appellees' motion to dismiss and for sanctions, which had also been scheduled for a hearing on March 23 and continued to March 24. Furthermore, Magnuson does not challenge the trial court's implied overruling of his motion for extension, motion to quash, and motion for rehearing by its granting of Appellees' motion to dismiss. The record reflects that the lack of a complete hearing on Magnuson's motions was due to his own failure to appear and present the remainder of his evidence to the trial court. Under these circumstances, we cannot perceive an abuse of discretion on the part of the trial court. We overrule Magnuson's third issue.

18. TEX.R. CIV. P. 215.

■ In his fourth issue, Magnuson challenges the propriety of the trial court's judgment dismissing his suit with prejudice and imposing monetary sanctions. Magnuson argues that the trial court's imposition of the harshest of sanctions for the alleged discovery abuse was an abuse of discretion.

Discovery sanctions are authorized by rule 215 of the Texas Rules of Civil Procedure.[18] Here, Appellees sought imposition of sanctions against Magnuson under rules 215.2(b)(5), 215.2(b)(8), and 215.3. Rule 215.2 provides in pertinent part:

**215.2 Failure to Comply with Order or with Discovery Request.**

. . . .

(b) *Sanctions by Court in Which Action is Pending.* If a party ... fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

. . . .

(5) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;

. . . .

(8) In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that

other circumstances make an award of expenses unjust. Such an order shall be subject to review on appeal from the final judgment.[19]

Rule 215.3 provides:

**215.3 Abuse of Discovery Process in Seeking, Making, or Resisting Discovery.** If the court finds a party is abusing the discovery process in seeking, making, or resisting discovery . . ., then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of Rule 215.2(b). Such order of sanction shall be subject to review on appeal from the final judgment.[20]

 A trial court's decision to impose discovery sanctions is reviewed under an abuse of discretion standard.[21] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.[22] Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.[23] An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.[24]

In *Powell*, the Texas Supreme Court outlined the limitations on a trial court's power to sanction a party for discovery abuse:

[W]hether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. . . . [T]he sanctions the trial court imposes must relate directly to the abuse found.

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that the courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.[25]

 Due process concerns mandate that the so-called "death penalty" sanctions be sparingly utilized.[26] Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses un-

---

19. TEX.R. CIV. P. 215.2(b)(5), (8).

20. TEX.R. CIV. P. 215.3.

21. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986).

22. *See Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex.1999); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

23. *Downer*, 701 S.W.2d at 241–42.

24. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied).

25. 811 S.W.2d at 917.

26. *Chasewood Oaks Condos. Homeowners Ass'n v. Amatek Holdings, Inc.*, 977 S.W.2d 840, 841 (Tex.App.-Fort Worth 1998, pet. denied).

less the party's hindrance of the discovery process justifies a presumption that his claims or defenses lack merit.[27] If a party refuses to produce material evidence, despite the imposition of lesser sanctions, the trial court may appropriately presume that an asserted claim or defense lacks merit and dispose of it accordingly.[28] "Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." [29]

The trial court adopted the following pertinent findings of fact and conclusions of law, as proposed by Appellees:

8) On October 7, 1999, Defendants filed and served on Plaintiff Defendants' Request for Disclosures pursuant to Tex.R.Civ.P. 194 and Defendants' First Request for Production pursuant to Tex.R.Civ.P. 196.

9) Plaintiff failed and refused to respond to this discovery.

10) After unsuccessfully attempting to contact Plaintiff regarding a mutually convenient date for his deposition, Defendants noticed Plaintiff's deposition for November 18, 1999.

11) Plaintiff failed and refused to appear for his deposition on November 18, 1999.

12) Defendants filed a Motion to Compel Responses to Discovery and Appearance for Deposition and for Sanctions ("Motion to Compel") on January 31, 2000.

13) A hearing on Defendants' Motion to Compel was held on February 18, 2000. Plaintiff neither filed a response to the Motion to Compel nor appeared at the hearing, despite adequate notice thereof and opportunity to be heard.

14) After the hearing, the Court entered an order compelling Plaintiff to respond to the discovery and appear for his deposition (the "February 18 Order"). Specifically, Plaintiff was ordered to appear and be deposed by Defendants on February 29, 2000, at 9:00 a.m. and to provide the requested discovery to Defendants' counsel on or before 5:00 p.m. on February 24, 2000.

15) Plaintiff had both actual and constructive notice of the February 18th Order.

16) Plaintiff failed and refused to comply with the February 18th Order.

. . . .

19) The Court further finds and concludes: (a) as of March 24, 2000, Plaintiff had not provided responses to the discovery and/or appeared and given his deposition as ordered; (b) Plaintiff's failure and refusal to appear for deposition and provide responses to the discovery as ordered was willful, intentional, and without any excuse; (c) Plaintiff has intentionally, knowingly, and wrongfully engaged in numerous dilatory and obstructionist tactics in this litigation; and (d) the dilatory and obstructionist tactics employed by Plaintiff in this litigation are consistent with the pattern and practice Plaintiff, acting *Pro Se*, has demonstrated in at least five other cases. . . .

20) Dismissal of Plaintiff's action with prejudice as a sanction pursuant to Tex.R.Civ.P. 215.2(b)(5) and (8) is

**27.** *TransAmerican,* 811 S.W.2d at 918.

**28.** *Id.*

**29.** *Id.*

reasonable, justified, and appropriate in this case because Plaintiff's conduct justifies the presumption that Plaintiff's claims lack merit and also because Plaintiff has exhibited flagrant bad faith.

After careful consideration of the record before us, we cannot conclude that the trial court abused its discretion in dismissing Magnuson's suit as a sanction for his abuse of the discovery process. We conclude that the circumstances of this case justify the extreme penalty imposed. Here, Magnuson filed a lawsuit and persistently refused to provide disclosures, to answer requests for discovery, and to appear for his deposition. Moreover, there is no indication that Magnuson made any attempt to secure discovery from Appellees during the thirteen months his case was pending. Further, the record reveals that the trial court tested lesser sanctions by its February 18th order. In sum, Appellant's refusal to cooperate with Appellees' legitimate discovery requests as well as his own failure to actively pursue his claims justified an assumption on the part of the trial court that Magnuson "either had no claim or was dragging [his] feet in mustering evidence of one;" in other words, that Appellant's claims lacked merit.[30]

■ Where, as here, a plaintiff files suit and then actively frustrates all legitimate attempts by a defendant to define the cause of action and investigate potential defenses, there is a direct relationship between the plaintiff's conduct and the trial court's dismissal of the action.[31] "A party who will not 'play by the rules' even after repeated orders to do so should not be allowed to play at all."[32] We also note that before Magnuson's suit was dismissed on Friday, March 24, 2000, the case had been set on the trial court's docket for the following Tuesday, March 28, although no discovery had been successfully conducted by either party. In addition, the trial court had before it evidence of similar conduct on the part of Magnuson in relation to the companion federal case as well as four other suits filed between 1992 and 1996 that were ultimately dismissed for want of prosecution. Having reviewed the entire record in light of the grave nature of the sanctions imposed and the limitations placed on a trial court's ability to order such sanctions, we hold that the trial court did not abuse its discretion in dismissing Magnuson's claims with prejudice. We overrule his fourth issue.

### Reasonable Accommodations

■ In his fifth and sixth issues, Magnuson contends that the trial court failed to make reasonable accommodations in conformity with the ADA to enable him to attend the hearings on February 18, 2000 and March 24, 2000. Magnuson's contention is not properly before us. As Appellees' point out, in the cases cited by Magnuson in support of his ADA claim, the plaintiffs filed lawsuits specifically naming the alleged discriminating courts or judges as defendants.[33] Here, Magnuson appears to be asserting a cause of action directly against the trial court that has not been litigated on its merits. We decline to decide an issue on appeal that has not yet

**30.** *Chasewood Oaks*, 977 S.W.2d at 845.

**31.** *Id.*

**32.** *Id.*

**33.** *See, e.g., Layton v. Elder*, 143 F.3d 469, 470 (8th Cir.1998) (action brought against Ted Elder, as county judge of Montgomery County, Arkansas, alleging discrimination under the ADA); *Galloway v. Superior Court of D.C.*, 816 F.Supp. 12, 13 (D.C.Cir.1993) (action challenging superior court's exclusion of blind persons from jury service).

been the subject of litigation in a trial court. Consequently, we overrule Appellant's fifth and sixth issues.

### Hearings on Motions

In his seventh through tenth issues, Magnuson argues that the trial court abused its discretion in failing to set his October 12, 1999 motion for enlargement of time and his February 18, 2000 motion for continuance for hearings and that the trial court's refusal in this regard violated his rights under the United States and Texas Constitutions.

 To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.[34] If a party fails to do this, error is not preserved, and the complaint is waived.[35] The objecting party must get a ruling from the trial court. This ruling can be either express or implied.[36] If the trial judge refuses to rule, an objection to the refusal to rule is sufficient to preserve error.[37] Even constitutional complaints may be waived if not properly presented to the trial court.[38]

After a careful review of the entire record, we conclude that Magnuson failed to preserve his constitutional challenges by presenting them in the trial court. Consequently, he has waived consideration of those issues on appeal. Additionally, the record reveals that Magnuson requested hearings on his motion for enlargement of time and motion for continuance only if such hearings were required. Magnuson did not raise in the trial court the complaints he now urges on appeal concerning the trial court's failure to set his motions for hearing. Accordingly, he has failed to properly preserve error. We overrule issues seven, eight, nine, and ten.

### CONCLUSION

Having overruled all of Appellant's issues on appeal, we affirm the trial court's judgment.

---

**34.** TEX.R.APP. P. 33.1(a); *see also* TEX.R. EVID. 103(a)(1).

**35.** *Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

**36.** *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex. App.-Fort Worth 1999, pet. denied).

**37.** TEX.R.APP. P. 33.1(a)(2).

**38.** *Cannon v. Lemon,* 843 S.W.2d 178, 183 (Tex.App.-Houston [14th Dist.] 1992, writ denied).