**Hilario HERNANDEZ, Appellant,**

v.

**MID–LOOP, INC. d/b/a Santikos Investments, Appellee.**

No. 04–04–00789–CV.

Court of Appeals of Texas, San Antonio.

June 1, 2005.

Dain A. Dreyer, Heygood, Orr, Reyes & Bartolomei, L.L.P., San Antonio, for appellant.

Edward C. Mainz Jr., Joe Frazier Brown Jr., Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice SARAH B. DUNCAN, Justice REBECCA SIMMONS, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Hilario Hernandez appeals the trial court's "death penalty" sanction dismissing his premises liability action against appellee Mid–Loop, Inc. d/b/a Santikos Investments. Hernandez contends the trial court abused its discretion, claiming his failure to fully respond to discovery was unintentional and does not indicate that his claim lacks merit. Because the trial court did not abuse its discretion, we affirm the order of dismissal.

### BACKGROUND

Hilario Hernandez alleged he was injured while riding a bicycle on a sidewalk across Mid–Loop's property on August 22, 2000. Hernandez alleged Mid–Loop had been excavating a hole in the sidewalk and covered it with plywood, and that he fell into the hole when the plywood collapsed under his weight. Hernandez sued Mid–Loop for damages, including past and future medical expenses, physical suffering, and mental anguish. Mid–Loop filed a general denial and asserted contributory negligence as a defense.

In a set of interrogatories served on Hernandez, Mid–Loop learned Hernandez previously injured his head, neck, and back; had a prior history of hospitalizations; filed a worker's compensation claim for a slip and fall injury in 1989; suffered a gunshot wound to his face in 1989; and sustained injuries in a car accident in November 2002. Hernandez provided a list of twelve of his medical providers subsequent to the alleged bicycle accident and the name of one physician he saw prior to the bicycle accident.

At a deposition held November 4, 2003, Mid–Loop attempted to ascertain the identities of Hernandez's medical providers, information regarding his medical history, which hospitals he visited, where he presently received medical treatment, and information regarding the worker's compensation claim. Hernandez was verbally abusive, hostile, and uncooperative throughout the deposition. Defense counsel asked Hernandez for his driver's license to determine if Hernandez had been involved in any previous accidents involving personal injuries. Hernandez refused to hand over his driver's license and became hostile. After consulting with his attorney, Hernandez complied, but told defense counsel to "eat shit and die."

At the deposition, Hernandez was in a wheelchair and wore a neck brace, but could not remember if any physician had prescribed these items for him. He told defense counsel his entire body hurt, except his hair and the tips of his fingernails. Hernandez stated he could not remember the names of any of his treating physicians, what medication he was taking, whether he ever worked at the Hyatt Hotel, whether he suffered a back injury fifteen years prior to the alleged accident, whether he filed a worker's compensation

claim or ever had been in a car accident. Hernandez admitted he had been to the hospital, but said he could not remember which one. He also stated he could not remember if he had been to physical therapy. Defense counsel asked Hernandez if he suffered any bodily pain prior to the alleged accident, and he repeatedly answered "I don't know." Defense counsel finally asked Hernandez to sign a medical release form in order to recover his medical records and Hernandez refused, arguing the records had nothing to do with his case.

Mid–Loop subsequently filed its first motion to compel and motion for sanctions, complaining Hernandez had been uncooperative and evasive. In lieu of a hearing, Hernandez agreed to an order regarding Mid–Loop's motion. The order provided in part that Hernandez present himself for deposition and respond to all questions to the best of his ability. Mid–Loop scheduled a second deposition for January 23, 2004, but Hernandez cancelled. The deposition was re-scheduled for February 17, 2004. Mid–Loop attempted a second time to elicit information regarding Hernandez's previous injuries and medical history. Throughout his second deposition, Hernandez again testified he could not recall any information regarding his medical history, medical providers, medications, hospitals or medical facilities he had visited for treatment, or whether any physician told him he needed to be in a wheelchair. Hernandez testified his attorney had copies of his medical records subsequent to the accident.

Hernandez indicated he injured his back approximately fifteen years prior to the accident and filed a worker's compensation claim. Hernandez also testified he had been in "a lot of accidents" and had prior injuries, but he could not describe the particulars of his previous accidents and injuries, except that he has scarring on his legs and was once shot in the face. When asked if he had ever been arrested, Hernandez stated "It's more likely yes, but I cannot tell you dates or anything like that." Hernandez complained of pain during the deposition, but declined an offer to end it and resume it when he felt better. He stated he has had problems with his memory since the accident and that is why he could not recall much information. At times, Hernandez became argumentative and would not answer Mid–Loop's questions directly. Mid–Loop recessed the deposition and scheduled a deposition with Hernandez's wife, Ernestina Hernandez, for April 13, 2004. Ernestina re-scheduled the deposition for April 27, 2004, but left a message with defense counsel the evening before, stating that she would not appear.

Mid–Loop filed a second motion for sanctions and motion to dismiss, complaining Hernandez continued to be uncooperative and refused to answer questions relevant to his case. Mid–Loop sought reimbursement for attorney's fees in addition to costs of the transcript and taking a non-appearance affidavit regarding Ernestina. Hernandez did not file an answer. At the hearing, the trial court asked Hernandez's counsel if he could provide any medical testimony supporting Hernandez's claims of memory loss, and he could not. Hernandez's counsel verified that medical testing of Hernandez's memory complaints had been "inconclusive." The trial court denied Mid–Loop's motion to dismiss and announced it would give Hernandez one more chance to cooperate. The trial court entered an order:

> IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff will present himself for deposition and will respond to all questions in good faith, to the best of his ability, and in a manner satisfactory to this Court. Should Plaintiff fail to

do so, his case will be dismissed by this Court in its entirety.

The trial court also ordered Hernandez to pay $2,626 in monetary sanctions for costs expended to take his February deposition, and costs for Ernestina's non-appearance, which Hernandez paid. Prior to the taking of Hernandez's third deposition and the deposition of Ernestina Hernandez, Mid–Loop issued a subpoena ordering them to produce the names of Hernandez's medical providers and Hernandez's medical records related to his head, neck, and back injuries from 1987 to the present.

Hernandez and his wife were deposed three weeks later on June 17, 2004. Hernandez and Ernestina did not comply with the subpoena. Hernandez had given his attorney medical records, but only records subsequent to his accident in August 2000. He testified he understood he was required to produce his medical records since 1987, had searched his home for them, and could not find them. Hernandez stated he made no other attempts to locate his medical records because he did not have any resources. He also did not ask his attorney for help locating them. Ernestina testified in her deposition that Hernandez's medical records prior to 2000 existed, but she did not bring them or make any effort to locate them because she "didn't have the time" and "didn't get around to it."

Ernestina verified that Hernandez was injured while working at the Hyatt Hotel several years prior to his bicycle accident. She also stated he "was hurt pretty bad" in a car accident in November 2002. She testified Hernandez was seeing a psychiatrist named Dr. Santa Miago, had surgery on his neck performed by Dr. Parra after the accident, and saw a physician, Dr. Barrera, for his back treatments. Hernandez testified, however, that his psychiatrist's name was "Dr. San Diego Sarabia," and

mentioned Dr. Parra, but could not remember where his physicians' offices were located. Hernandez was unable to provide the names of any of his medical providers prior to the accident and repeatedly asked if he could provide a list of the names later, despite acknowledging he was responsible for the list that day.

Hernandez again wore a neck brace and used a wheelchair, but could not tell defense counsel which physician, if any, ordered them for him. Mid–Loop searched the limited medical records Hernandez provided and could not locate prescriptions for the wheelchair and neck brace, or any physician's orders for Hernandez to use them. Hernandez could not recall being in any other accidents, including car accidents.

Mid–Loop filed its third motion for sanctions and second motion to dismiss on July 14, 2004, alleging Hernandez failed to comply with the court's order because he did not produce the names of any of his medical providers prior to the accident; was sarcastic, uncooperative, and evasive; only provided two partial names of his current treating physicians; and failed to disclose he had been in a serious car accident and sustained injuries subsequent to his bicycle accident. Hernandez did not file an answer. After a hearing, the trial court entered an order striking Hernandez's pleadings and dismissing his case with prejudice. The trial court denied Hernandez's motion to reconsider.

## DISCUSSION

■ In his sole issue, Hernandez contends the trial court abused its discretion in dismissing his case against Mid–Loop because there is insufficient evidence he abused the rules of discovery, or in the alternative, Texas law does not permit death penalty sanctions in his case.

■ Discovery sanctions are authorized by Texas Rule of Civil Procedure 215. Specifically, the trial court is authorized to strike a party's pleadings and dismiss an action with or without prejudice, *i.e.*, issue "death penalty" sanctions. Tex.R. Civ. P. 215.2(b)(5). We review the trial court's imposition of sanctions for discovery abuse under an abuse of discretion standard. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex.2000). In assessing sanctions for discovery abuse, the trial court may consider everything that has occurred during the litigation. *Berry–Parks Rental Equip. Co. v. Sinsheimer*, 842 S.W.2d 754, 757 (Tex.App.-Houston [1st Dist.] 1992, no writ). When reviewing a trial court's imposition of sanctions, we view conflicts in the light most favorable to the trial court's ruling, and resolve all inferences in favor of the trial court's judgment. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex.App.-San Antonio 2000, pet. denied).

■ The purpose of discovery sanctions is threefold: 1) to secure compliance with discovery rules; 2) to deter other litigants from similar misconduct; and 3) to punish violators. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992) (orig.proceeding). Any sanction imposed under Rule 215.2(b) must be just. Tex.R. Civ. P. 215.2(b); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003). For the imposition of sanctions to be just, a direct relationship must first exist between the offensive conduct and the sanction imposed. *TransAmerican*, 811 S.W.2d at 917. In other words, a just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party. *Id.* Second, a just sanction must not be excessive; it should be no more severe than necessary to satisfy its legitimate purposes. *Id.* To achieve this end, the trial court must first consider the availability of less stringent sanctions to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse. *Chrysler Corp.*, 841 S.W.2d at 849.

■ A death penalty sanction "is of particular concern" because the trial court renders judgment without addressing the merits of the case. *Hamill v. Level*, 917 S.W.2d 15, 16 (Tex.1996). Thus, death penalty sanctions should only be imposed in the face of flagrant bad faith or conduct that justifies a presumption that the offending party's claims or defenses are meritless. *TransAmerican*, 811 S.W.2d at 918.

In each of its motions, Mid–Loop asserted that Hernandez violated Rule 215.1(c) of the Texas Rules of Civil Procedure, which provides for sanctions where a party has given an "evasive or incomplete" answer. Tex.R. Civ. P. 215.1(c). Hernandez contends the evidence is insufficient to support the conclusion he was intentionally evasive. We disagree. Hernandez repeatedly blamed his failure to answer questions on memory problems, but could not produce any conclusive medical evidence of memory deficit. Moreover, the record reveals Hernandez knew he had been ordered to produce his medical records and the names of his medical providers since 1987, but failed to do so. Hernandez implied that he was able to produce such records, however, as he continuously asked if he could provide the list at a later time. Hernandez also provided incomplete answers regarding his prior accidents. The evidence is sufficient to support the trial court's conclusion Hernandez violated Rule 215.1(c).

Hernandez also contends death penalty sanctions were unlawful in this case. We again disagree. Under Rule 215, the trial court has discretion to dismiss a case with prejudice where a party fails to obey a court order to comply with proper discovery requests. *See* Tex.R. Civ. P. 215.2(b)(5). After careful consideration of the record before us, we cannot conclude that the trial court abused its discretion in dismissing Hernandez's suit as a sanction for his abuse of the discovery process. We conclude the circumstances of this case justify the penalty imposed. Here, Hernandez filed a lawsuit and persistently failed to cooperate in his depositions and disclose crucial information regarding his medical history. Further, the record reveals that the trial court tested lesser sanctions by its June 7, 2004 order. Hernandez paid the monetary fine and continued to be uncooperative, which shows the lesser sanctions failed to effectuate compliance. Hernandez's refusal to cooperate with Mid–Loop's legitimate discovery requests justifies the trial court's assumption that Hernandez's claim lacked merit. *See Chasewood Oaks Condominiums Homeowner's Ass'n., Inc. v. Amatek Holdings, Inc.,* 977 S.W.2d 840, 845 (Tex. App.-Fort Worth 1998, pet. denied) (citing *Hamill,* 917 S.W.2d at 16).

Where, as here, a plaintiff files suit and then actively frustrates all legitimate attempts by a defendant to define the cause of action and investigate potential defenses, there is a direct relationship between the plaintiff's conduct and the trial court's dismissal of the action. *Id.* "A party who will not 'play by the rules' even after repeated orders to do so should not be allowed to play at all." *Id.* After his first deposition, the trial court gave Hernandez two more opportunities to cooperate. Even after the imposition of lesser sanctions, Hernandez continued to give evasive and incomplete answers to legitimate discovery requests.

Conduct such as that exhibited by Hernandez indicates either that he believes the court system can be manipulated for his personal gain, or that he is in need of mental health services. Indeed, at one sanctions hearing Hernandez's counsel expressed concern that Hernandez was incapacitated and in need of a guardian. In any event, the trial court offered Hernandez at least two opportunities to correct his deficient conduct; the court exhibited restraint in not dismissing Hernandez's suit earlier. To allow this suit to continue in the face of Hernandez's blatant failure to respond to discovery would serve no rational purpose, and if anything, would undermine the legitimate role that the tort system serves for those who are truly injured by another's negligence.

Having reviewed the entire record, we hold that the trial court did not abuse its discretion in dismissing Hernandez's claims with prejudice. The judgment of the trial court is affirmed.